**John DISTON, Plaintiff, Appellee and Cross–Appellant,**

v.

**ENVIROPAK MEDICAL PRODUCTS, INC. a Utah corporation, et al., Defendants, Appellants and Cross–Appellees.**

No. 940062–CA.

Court of Appeals of Utah.

March 27, 1995.

---

Ellen Maycock and David C. Wright, Salt Lake City, for appellant.

Neil R. Sabin and Marilyn P. Fineshriber, Salt Lake City, for appellee.

Before BENCH, BILLINGS, and WILKINS, JJ.

## OPINION

WILKINS, Judge:

This matter arises from a dispute over a purported employment agreement. The trial court found the existence of an agreement, but limited its terms and application. We affirm in part, and reverse and remand in part.

## BACKGROUND

The issues of this case arise out of three connected relationships: (1) the relationship between the Appellee, John Diston, and Fred Ninow, (2) the relationship between Mr. Ninow and the Appellant, EnviroPak Medical Products (EnviroPak), and (3) the relationship between EnviroPak and its parent corporation, Surgical Technologies (Surgical).

Sometime in late 1990 or early 1991, Mr. Diston became acquainted with Mr. Ninow. At the time, Mr. Ninow was associated with a medical supply company and Mr. Diston was Assistant Director of Peri–Operative Services at a Salt Lake City hospital. Mr. Ninow introduced Mr. Diston to a product consisting of pre-packaged supply packets featuring principal components that are laundered, sterilized and pre-packed for repeated use in various health care procedures. Mr. Diston was enthusiastic about the potential of this product and made some suggestions as to how it could be improved. The hospital was similarly impressed and contracted with the medical supply company for the product.

Sometime later, when the medical supply company was unwilling or unable to market this product on a large scale, Mr. Ninow decided to leave that company and try to form his own company. Mr. Diston expressed a willingness to be involved with the new company. Over the next few months Mr. Ninow and Mr. Diston discussed their respective roles with this new company, with the understanding that Mr. Diston was to serve as Director of Operations. During that time, with some input from Mr. Diston and others, Mr. Ninow wrote a preliminary general business plan regarding the proposed company's financing, operations, and marketing of the product. The business plan listed Mr. Diston as a key employee.

While Mr. Ninow was searching for financing for this new company, he became acquainted with the principals of Surgical. After discussions between Mr. Ninow and Surgical representatives, they reached an agreement whereby a new company would be formed, EnviroPak, as a wholly-owned subsidiary of Surgical.

On September 19, 1991, Mr. Ninow, EnviroPak, and Surgical executed an organization agreement. This organization agreement provided, among other things, that Mr. Ninow would be a director, chairman of the board, and president of EnviroPak; that EnviroPak would enter into an employment agreement with Mr. Ninow contemporaneously with the execution of the organization agreement; that Mr. Ninow would assign to EnviroPak his business plan; that Surgical could designate two directors of EnviroPak and Mr. Ninow could designate another director; and that EnviroPak would have considerable autonomy of operation. That same day Surgical issued a news release regarding the formation of EnviroPak, referring to Mr. Ninow as EnviroPak president and CEO.

The organizational agreement was silent on the issue of whether Mr. Ninow had the authority to hire employees for EnviroPak and to make a commitment for any particular salary. However, because of his specific responsibilities with EnviroPak, as articulated in the organization agreement and his employment agreement, Mr. Ninow believed that he had the authority to enter into an employment arrangement with Mr. Diston.

The next day, September 20, 1991, Mr. Ninow met with Mr. Diston and presented him with a document entitled "Letter of Intent to Enter Employment Agreement." The letter of intent provided that Mr. Diston would be employed for three years commencing on or before October 31, 1991, at a salary of $72,000 per year. The letter of intent also provided that Mr. Diston would participate in the company's stock option program; receive health and accident insurance; be reimbursed for business expenses; participate in the incentive compensation program; and receive two weeks paid vacation. During the discussion of this letter of intent, Mr. Ninow

and Mr. Diston orally agreed to a $360 per month car allowance for Mr. Diston. Mr. Diston informed Mr. Ninow that he accepted those terms and intended to give notice to terminate his employment at the hospital. Both Mr. Diston and Mr. Ninow contemplated that Mr. Diston would enter into a formal, complete employment agreement, consistent with the letter of intent, at a later time. However, both understood that they had already entered into a binding employment agreement. In reliance on this understanding, Mr. Diston gave notice to the hospital of his intent to terminate his employment and did in fact terminate his employment with the hospital.

Not long thereafter, disputes arose between the representatives of Surgical sitting on EnviroPak's board and Mr. Ninow. As a result, Mr. Ninow was fired for, among other things, failing to consult with the board of directors of EnviroPak on important decisions, including the hiring of employees. Mr. Diston subsequently met with the two remaining EnviroPak directors, who offered Mr. Diston a job for $60,000 a year without other benefits. Mr. Diston refused this offer. He then brought suit against EnviroPak to enforce the employment agreement he had with Mr. Ninow. EnviroPak ceased business operations effective December 31, 1992.

After a bench trial, the trial court found that: (1) Mr. Ninow had the apparent authority to enter into an employment agreement with Mr. Diston; (2) "Mr. Ninow and Mr. Diston agreed on the essential provisions of the Letter of Intent to the extent that it provided for an offer of employment of a term of years and for a specific salary and, hence, there existed a valid agreement between EnviroPak and Mr. Diston;" (3) EnviroPak breached the agreement; and (4) EnviroPak was the alter ego of Surgical. The trial court awarded damages to Mr. Diston in the amount of $54,834.60, representing the difference between Mr. Diston's actual earnings and what he would have earned under the agreement from October 31, 1991 through December 31, 1992, when EnviroPak went out of business.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

EnviroPak argues that the trial court erred in concluding (1) that the letter of intent was a contract of employment between EnviroPak and Mr. Diston, and (2) that Mr. Ninow had apparent authority to execute the letter of intent on behalf of EnviroPak. Mr. Diston cross-appeals and argues that the trial court erred (1) in terminating the damages as of the date EnviroPak ceased business, after finding that EnviroPak was the alter ego of Surgical, and (2) in refusing to award the monthly car allowance agreed to between Mr. Diston and Mr. Ninow. Neither party has challenged the trial court's factual findings. Therefore, we will accept the factual determinations and review the trial court's legal conclusions under a correction of error standard. *State v. Pena*, 869 P.2d 932, 936 (Utah 1994).

## EMPLOYMENT AGREEMENT

Mr. Diston introduced as evidence a document that reads as follows:

### LETTER OF INTENT TO ENTER EMPLOYMENT AGREEMENT

THIS LETTER OF INTENT TO ENTER INTO AN EMPLOYMENT AGREEMENT (this "Letter of intent") dated September 20, 1991, by and between ENVIROPAK MEDICAL PRODUCTS, INC., a corporation organized and existing under the state of Utah (the "Company") and JOHN DISTON ("Employee").

1. *INTENT.* The Company intends to enter into an employment agreement with Employee on or before October 31, 1991.

2. *Term.* The initial term of the employment agreement shall be for three years.

3. *Compensation.*

(a) For all services rendered by Employee, the Company shall pay a salary of $72,000 per year payable as earned in twenty-four (24) equal semi-monthly payments. All salary shall be subject to withholdings and other applicable taxes. Such salary shall be reviewed annually and shall remain fixed or be increased to the extent

deemed appropriate by the board of directors of the Company.

(b) As an incentive compensation, Employee shall participate in the Company‚s [sic] cash incentive compensation pool.

(c) The Company shall provide health and medical insurance to be chosen by the Company for its full time employees.

(d) The Company shall provide Employee a monthly automobile allowance.

(e) The Company shall provide Employee with stock options as incentive to enter into an Employment Agreement with the Company. The Company shall also provide Employee with future stock options as part of the Company incentive program. These options will be determined by the company at the time of employment.

(f) The Company will pay for actual and reasonable expenses incurred by Employee in connection with the business of the company, including expenses for entertainment, travel and similar items.

(g) The Employee shall be entitled each year to a paid vacation of at least two (2) weeks.

LETTER OF INTENT as of the date first above written.

ENVIROPAK MEDICAL PRODUCTS, INC.

By /s/ Frederick Ninow

Duly Authorized Officer

■ It is unclear from the findings of fact and conclusions of law what significance the trial court attached to this letter. Throughout the findings the letter of intent is referred to as the "Employment Agreement." To the extent that the trial court viewed the letter of intent as an independent written agreement, as Mr. Diston claims, the trial court erred. There is no agreement, or meeting of the minds, contained within the four corners of the letter of intent. Mr. Diston does not agree to any obligation enforceable by EnviroPak. The plain meaning of the letter of intent indicates that it is precisely that—a letter of intent, not an agreement.

■ However, the lack of a written agreement does not mean that there was no enforceable agreement. The trial court concluded that "Mr. Ninow and Mr. Diston agreed on the essential provisions of the Letter of Intent to the extent that it provided for an offer of employment of a term of years and for a specific salary and, hence, there existed a valid agreement between EnviroPak and Mr. Diston." This language suggests that the trial court recognized that the agreement was not the letter of intent, but rather an oral agreement which included the terms articulated in the letter of intent.

Based on the trial court's findings of fact and the uncontroverted testimony at trial of Mr. Diston and Mr. Ninow, we conclude that an oral employment agreement was reached between the parties. On the day Mr. Ninow presented Mr. Diston with the letter of intent, they discussed Mr. Diston's role with EnviroPak. Both testified that they had an understanding that Mr. Diston would be the director of operations, in charge of quality control and production, based on discussions which occurred during the previous few months. Mr. Ninow offered this job to Mr. Diston with the terms written in the letter of intent. In addition to the written terms, the trial court found that they also agreed to a $360 per month car allowance for Mr. Diston. The trial court found, and both Mr. Diston and Mr. Ninow testified, that Mr. Diston accepted the terms offered by Mr. Ninow. At this point, a contract was formed. Both Mr. Ninow and Mr. Diston testified that they had reached an agreement.

■ Of course, even if Mr. Ninow and Mr. Diston believed they had an agreement, that agreement must be definite enough to perform and enforce. *See Valcarce v. Bitters,* 12 Utah 2d 61, 63, 362 P.2d 427, 428 (1961). The requirement that a contract be sufficiently definite is a functional requirement from the parties' perspective in terms of whether it can be performed, and from the courts' perspective in terms of whether it can be enforced. *See Bunnell v. Bills,* 13 Utah 2d 83, 86, 368 P.2d 597, 600 (1962) ("[A] contract can be enforced by the courts only if the obligations of the parties are set forth with sufficient definiteness that it can be performed."); Restatement (Second) of Contracts § 33 (1979) ("The terms of a contract

are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.")

Mr. Ninow and Mr. Diston agreed that Mr. Diston would work for three years as the director of operations of EnviroPak, as understood by the parties based on their prior discussions, for annual compensation of at least $72,000. EnviroPak refused to hire Mr. Diston under the terms of this agreement. The existence of a breach can be determined in this case and at least one compensation term provides a basis for fashioning an appropriate remedy.[1] Therefore, the agreement is not too indefinite to be enforced.

The conclusion of the trial court is thus affirmed to the extent that it found an enforceable oral agreement including the terms written in the letter of intent. However, we reverse the trial court to the extent it found that the letter of intent was itself a written agreement.[2] We hold that an enforceable oral agreement was reached between Mr. Ninow and Mr. Diston.

## AUTHORITY OF MR. NINOW

■ The trial court found that Mr. Ninow had apparent authority to act for EnviroPak. A finding of apparent authority requires that the acts or conduct of the principal, EnviroPak, creates an appearance which causes a third party, Mr. Diston, to reasonably believe that a second party, Mr. Ninow, has authority to act on the principal's behalf. See Zions First Nat'l Bank v. Clark Clinic Corp., 762 P.2d 1090, 1095 (Utah 1988); Walker Bank & Trust Co. v. Jones, 672 P.2d 73, 75 (Utah 1983). The appellants argue that Mr. Diston's belief that Mr. Ninow had authority was unreasonable and that Mr. Diston had a duty to ascertain Mr. Ninow's true authority. However, we need not determine whether Mr. Ninow had apparent authority because it is clear from the record

that Mr. Ninow had *actual* authority to enter into an employment contract with Mr. Diston.

While an analysis of apparent authority focuses on the acts of the principal from a third party's perspective, an analysis of actual authority focuses on the acts of the principal from the agent's perspective. Restatement (Second) of Agency § 26 (1953) ("[A]uthority to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account."). The question in this case is whether Mr. Ninow reasonably believed he had authority to hire Mr. Diston.

On September 19, 1991, Mr. Ninow, EnviroPak, and Surgical entered into an organization agreement which provided that Mr. Ninow would be director, chairman of the board, and president of EnviroPak. The agreement also stated that EnviroPak would have considerable autonomy of operation. That same day, Surgical issued a news release regarding the formation of EnviroPak that referred to Mr. Ninow as "EnviroPak President and CEO." In addition to the organization agreement, Mr. Ninow and EnviroPak subsequently executed an employment agreement which provided that Mr. Ninow was employed by EnviroPak as president, director, chairman of the board of directors, and chief operating officer "with all of the rights, powers and obligations normally associated with such position." There was no specific mention in any agreement or press release of Mr. Ninow's authority to hire employees, either positive or negative.

■ Actual authority can be either express or implied. *Zions Bank*, 762 P.2d at 1094. There is no evidence that express authority to hire employees was given to Mr. Ninow, so the actual authority must be im-

---

1. The trial court based its award of damages on the agreed $72,000 annual salary. The court refused to award additional damages based on the additional terms listed in the letter of intent because of insufficient evidence. In other words, the additional terms were too indefinite. The fact that some of the terms are too indefinite for enforcement does not render the entire agreement unenforceable.

2. Although the letter of intent is not a written agreement and could not stand alone as a contract, it is a sufficient note or memorandum of the oral agreement to satisfy the statute of frauds. Utah Code Ann. § 25–5–4 (Supp.1994).

plied from the express authority granted by EnviroPak and its sole shareholder, Surgical. We hold that, in the absence of any contrary communication, the combined corporate positions of chairman of the board, president, and chief operating officer, collectively carry with them the implied authority to enter into a contract with a prospective employee on behalf of the corporation. By conferring these positions on Mr. Ninow without restriction, we conclude as a matter of law that the principals of Surgical and EnviroPak caused Mr. Ninow to reasonably believe he had the authority to hire employees. Therefore, EnviroPak is bound by the agreement between Mr. Ninow and Mr. Diston.

## DAMAGES AFTER ENVIROPAK CEASED BUSINESS

The trial court found that EnviroPak was the alter ego of Surgical. This finding is not challenged on appeal. Thus, Surgical is liable to the full extent of EnviroPak's obligations under the employment agreement with Mr. Diston.

The trial court calculated damages beginning on the date Mr. Diston would have begun work and ending on the date EnviroPak ceased doing business. Mr. Diston argues that it was improper to limit damages in this way. He argues that because EnviroPak and Surgical were alter egos the trial court should have held Surgical liable for damages throughout the entire three-year term of the agreement. Surgical responds by claiming that EnviroPak's cessation of business frustrated the purpose of the employment agreement. Due to this frustration of purpose, Surgical argues that both Mr. Diston and EnviroPak were excused from further performance. Because Surgical is only liable to the extent EnviroPak is liable, Surgical argues that it cannot be held accountable for EnviroPak's employment contracts after EnviroPak ceased business, as long as the business was not terminated improperly.

We find Surgical's frustration of purpose argument unpersuasive. Surgical calls to our attention the case of *Castagno v. Church,* 552 P.2d 1282 (Utah 1976), in which the court stated:

The applicability of [the doctrine of frustration of purpose] depends on the total or *nearly total destruction of the purpose* for which, in the contemplation of both parties, the transaction was made. Although performance remains possible, the expected value of performance to the party seeking to be excused has been *destroyed by a fortuitous event;* which supervenes to cause an actual, but not literal, failure of consideration.

*Id.* at 1283 (emphasis added). The decision of EnviroPak to cease business does not qualify as a fortuitous event which supervened to cause a near total destruction of the purpose for which the contract was made. There was no supervening event which made it virtually impossible for EnviroPak to honor its contracts.[3]

Surgical directs us to the trial court's finding that there was no evidence that Surgical was purposely or negligently responsible for the failure of EnviroPak's business. It is irrelevant whether Surgical was responsible for EnviroPak's failure. We can assume that Surgical wanted EnviroPak to be a successful business, but that it turned out not to be as successful as anticipated, and for legitimate business reasons Surgical terminated EnviroPak's operations. This does not amount to a frustration of the purpose of the employment contracts of EnviroPak. In other words, the fact that EnviroPak was losing money, or not making enough money, may provide Surgical with a legitimate reason for ending its operations, but it does not excuse the obligations of EnviroPak. The existing employment

**3.** Surgical directs our attention to *Alabama Football v. Wright,* 452 F.Supp. 182 (N.D.Tex.1977), *aff'd* 607 F.2d 1004 (5th Cir.1979). In *Alabama Football,* Wright had a three year contract with the Alabama football team, a team in the World Football League. Before Wright's contract expired, the league dissolved. The court held that because the dissolution of the league made performance of the remaining portions of the contract impossible, the parties were excused. This case does not support Surgical's position. There are no external factors in the present case analogous to the dissolution of a league, making it impossible for the parties to perform their contract.

contracts of EnviroPak must be considered by Surgical when making the business decision to discontinue operations.

Based on the foregoing, we hold that the trial court erred by not calculating damages after the date EnviroPak ceased business. Surgical, as the alter ego of EnviroPak, is liable for the full damages caused by EnviroPak's breach of the three year employment agreement with Mr. Diston.

### MONTHLY CAR ALLOWANCE

██ The trial court found that Mr. Diston and Mr. Ninow orally agreed to a $360 per month car allowance for Mr. Diston. The letter of intent, signed by Mr. Ninow, stated that Mr. Diston would receive a monthly car allowance. Mr. Diston argues that the trial court erred by not including this term in its calculation of damages. EnviroPak argues that this term should not be enforced because the written letter of intent was too indefinite and the oral agreement was an unenforceable modification according to the statute of frauds. Utah Code Ann. § 25-5-4 (Supp.1994). Again, we agree with Mr. Diston.

The agreed figure of $360 per month was part of the original agreement as a form of compensation and is clearly definite enough to enforce. There was no modification of this agreement. As discussed earlier, the letter of intent is not, nor could it be, an agreement. The agreement between Mr. Ninow and Mr. Diston was oral, consisting in part of the terms memorialized in the letter of intent, including the provision for a monthly car allowance, which the parties made more definite. Although not an agreement, the letter of intent is a sufficient note or memorandum, evidencing the existence and terms of the agreement, to satisfy the statute of frauds. Therefore, the $360 per month car allowance is fully enforceable and should be enforced as part of Mr. Diston's agreement with EnviroPak.

### CONCLUSION

Mr. Diston and Mr. Ninow entered into a valid and enforceable oral agreement for employment. Under the terms of the agreement, Mr. Diston was to work for EnviroPak as director of operations for three years in exchange for an annual salary of at least $72,000, plus a monthly car allowance of $360, plus additional compensation terms which were too indefinite to be enforced. Their agreement was evidenced in part by the letter of intent, signed by Mr. Ninow on behalf of EnviroPak, which recited the three year term, the $72,000 annual salary, and referred to a monthly car allowance, thus removing the oral agreement from the statute of frauds. EnviroPak failed to honor this agreement.

Mr. Ninow had actual authority to enter into the employment contract on behalf of EnviroPak. Therefore, EnviroPak is liable for the breach of Mr. Diston's employment agreement.

Surgical is liable, under an alter ego theory, for the obligations incurred by EnviroPak. Because EnviroPak is obligated to Mr. Diston under a three-year agreement, there being no frustration of purpose excusing EnviroPak from performing, Surgical is also obligated for the full three-year term.

Accordingly, we remand for entry of judgment based on the full three-year agreement, including the $360 per month car allowance, consistent with this opinion.

BENCH and BILLINGS, JJ., concur.