2009 UT App 347

**Michael C. POSNER, Plaintiff and Appellant,**

v.

**EQUITY TITLE INSURANCE AGENCY, INC., a New Jersey corporation; and NRT, Inc., a New Jersey corporation dba Coldwell Banker Residential Brokerage, Defendants and Appellees.**

No. 20090058–CA.

Court of Appeals of Utah.

Nov. 27, 2009.

Catherine A. James, Mountain Green; and David E. Ross II, Park City, for Appellant.

David M. Bennion, Salt Lake City; and David W. Overholt and Robert A. Ponte, South Jordan, for Appellees.

Before GREENWOOD, P.J., BENCH and ORME, JJ.

## OPINION

GREENWOOD, Presiding Judge:

¶1 Michael C. Posner appeals the trial court's separate grants of summary judgment in favor of Equity Title Insurance Agency, Inc. (Equity) and NRT, Inc., dba Coldwell Banker Residential Brokerage (Coldwell), alleging that the trial court committed various errors in dismissing Equity and Coldwell from Posner's suit relating to the sale of real property owned by Posner. We affirm.

## BACKGROUND

¶2 In 2002, Posner, a Florida resident, retained Coldwell—in particular, Coldwell real estate agent Kandis Christoffersen—to list for sale two lots Posner owned in Deer Valley, Utah. To this end, Posner and Coldwell executed a Listing Agreement that detailed the scope of the relationship and included a prevailing party attorney fee provision. Sale of the lots was negotiated with a buyer for a purchase price of $450,000, with Posner agreeing to provide $260,000 in seller financing.[1] To ensure payment on his portion of the financing, Posner required the buyer to supply a surety bond for $260,000, which requirement was included in the real estate purchase contract (the REPC) entered into between Posner and the buyer. The REPC, however, included no further details regarding the bond provider or the bond itself, requiring simply that the bond be "secured in second position."

¶3 Posner hired Equity to act as his escrow agent at the closing of the transaction. The buyer was represented by another title

---

1. Neither the buyer nor the buyer's title company are parties to this appeal, and each is mentioned only where necessary for our analysis.

company. Posner signed the necessary closing documents and returned to his home in Florida. Five days later, the buyer supplied to his escrow agent the documents required of him to close the sale. Included among these was a document entitled "Financial Guarantee" issued by American Natural Resources Corporation and purporting to guarantee payment of the $260,000 financed by Posner in the event the buyer defaulted.[2] That same day, the buyer's title company delivered these documents, including the Financial Guarantee, to Equity. Equity, in turn, sent the documents to Christoffersen, who acknowledged receipt thereof in a telephone conversation that day. Two days later, Christoffersen informed Equity that she had spoken with Posner, and that Posner had approved the Financial Guarantee and instructed her to have Equity complete the closing. Equity closed the transaction that day.

¶ 4 After the closing, the buyer failed to make any payments to Posner. Seeking to recover the money he was owed, Posner made demands of the third-party guarantor under the Financial Guarantee. These demands proved futile. Posner then filed suit against Equity and Coldwell, asserting that each had breached a fiduciary duty to Posner and further asserting that Equity was negligent. Equity requested and was granted summary judgment against Posner because, as the trial court determined, Equity had simply followed the instructions of Posner's agent, Christoffersen. Posner and Coldwell participated in court-ordered mediation that ended unsuccessfully. Following this mediation, Coldwell filed a motion for summary judgment that was denied.

¶ 5 Moving the case forward, the trial court entered an Amended Scheduling Order establishing deadlines for completion of fact discovery and expert witness designation as October 13, 2006, and December 12, 2006, respectively.[3] Through interrogatories dated July 26, 2006, Coldwell had requested that Posner identify any expert witnesses he intended to call at trial. Posner responded to the interrogatories but did not identify Gage Froerer as an expert he intended to call. On December 26, 2006, approximately two weeks after expiration of the deadline, Posner filed an unsigned Rule 26(a)(3) Designation of Expert Witness Gage Froerer. *See* Utah R. Civ. P. 26(a)(3) (providing procedures for the disclosure of expert testimony).

¶ 6 More than a year later, following expiration of all deadlines in the Amended Scheduling Order and a significant period of inactivity, the trial court ordered Posner to show cause as to why the case should not be dismissed for failure to prosecute. Posner certified that he was ready to immediately proceed to trial. Rather than dismissing the case, the trial court determined the final pretrial and trial schedules and set a jury trial for three days in June 2008. In mid-March 2008, Coldwell filed two motions in limine: one to exclude the testimony and report of Froerer, and one to exclude various documents Posner allegedly produced after expiration of the fact discovery deadline. The trial court agreed with Coldwell that the subject documents and expert witness designation were produced after expiration of the respective deadlines established in the Amended Scheduling Order, with no adequate justification for their tardiness. Further determining that Coldwell would suffer prejudice if the documents or testimony were

---

2. The third-party guarantor required payment of $3900 by the buyer as consideration for providing the Financial Guarantee. The buyer apparently requested that Posner increase the seller financing to include this $3900. Posner agreed to increase his financing by this amount, thus raising the amount financed by Posner to $263,900. Posner does not dispute that he approved the increased financing.

3. The Order actually set the deadline for fact discovery on October 13, 2006, and ordered that expert reports be filed on or within sixty days of that date. Although Posner argued before the

trial court that sixty days after October 13 fell on December 14, 2006, the trial court determined the correct deadline was December 12. The exact date is immaterial because Posner did not file his report with the court until December 26. In addition, Posner has failed to provide any evidence to challenge these factual findings. Therefore, we accept as true that the expert report was due on December 12, 2006, and was submitted on December 26, 2006. *See* Utah R.App. P. 24(a)(9); *Moon v. Moon*, 1999 UT App 12, ¶ 24, 973 P.2d 431.

allowed at trial, the trial court granted both of Coldwell's motions in limine, excluding the documents and expert witness testimony.

¶ 7 Coldwell then moved for summary judgment on the ground that, due to the complexity of the real estate transaction at issue, expert testimony was required to prove that Coldwell, through Christoffersen, breached a fiduciary duty owed to Posner. The trial court agreed with Coldwell that the subject transaction was "complex[ ] and ... unusual," and thus held "that expert testimony is necessary for [Posner] to satisfy the required elements of his claim for breach of fiduciary duty." Because the testimony and report of Posner's sole expert had been excluded, the trial court granted summary judgment in favor of Coldwell. The trial court then awarded Coldwell its reasonable attorney fees and costs pursuant to the Listing Agreement. Posner appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 8 Posner argues that the trial court erred in granting summary judgment in favor of Equity because material issues of fact exist and Equity was not entitled to judgment as a matter of law because Christoffersen lacked authority to act on Posner's behalf to allow the closing by Equity to take place. Posner also argues that, based on the undisputed material facts, Coldwell was not entitled to judgment as a matter of law because expert testimony is not required to establish a breach of fiduciary duty. We "review[ ] a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and view[ ] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson,* 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted). Posner further asserts that the trial court's grant of Coldwell's summary judgment motion was based on the trial court's decision to exclude the testimony of Posner's designated expert witness, which decision Posner claims to be an abuse of discretion. However, Utah law mandates that a trial court exclude an expert witness report disclosed after expiration of the established deadline unless the trial court other-

wise chooses to exercise its equitable discretion. *See* Utah R. Civ. P. 37(f). In this case, because the trial court chose not to exercise its discretion, our review of its decision to exclude the testimony of Posner's expert is both for correctness and abuse of discretion. *See id.; Rukavina v. Sprague,* 2007 UT App 331, ¶ 8, 170 P.3d 1138.

¶ 9 With respect to Coldwell, Posner further asserts that the trial court erred in awarding Coldwell its attorney fees pursuant to the Listing Agreement, asserting that he did not sue for breach of the Listing Agreement and that his claims against Coldwell sounded in tort law. Whether attorney fees should be awarded in a particular case is a question of law, reviewed for correctness. *See Valcarce v. Fitzgerald,* 961 P.2d 305, 315 (Utah 1998).

## ANALYSIS

### I. Summary Judgment

¶ 10 Posner asserts that the trial court erred in granting summary judgment to both Equity and Coldwell, albeit for different reasons. Summary judgment is appropriately granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c).

### A. Posner's Claims Against Equity

¶ 11 Posner argues that the trial court's grant of summary judgment in favor of Equity was error because there were disputed issues of material fact surrounding events at the closing. Specifically, Posner identifies several facts he disputed before the trial court, each of which fall into one of two general contentions: (1) that neither Equity nor Coldwell had the Financial Guarantee prior to the closing, and (2) that Christoffersen's verbal approval of the closing was not based on Posner's informed consent because Posner was not provided with a copy of the Financial Guarantee prior to the closing. We disagree with Posner that either of these contentions preclude summary judgment be-

cause the record fails to support existence of genuine disputed material issues of fact.[4]

■ ¶ 12 With respect to Posner's first factual contention, the trial court was presented with testimony of Equity's agent, Helen Smith, that she received the Financial Guarantee from the buyer's title company on or about August 28, 2002, and either faxed or hand-delivered it to Christoffersen on or about the same day. Furthermore, Christoffersen testified that she received the Financial Guarantee from Smith on August 28. In response, Posner submitted phone records for the office of the buyer's escrow agent, arguing that they showed no fax to Equity on the days at issue. Posner stated that he "ha[d] uncovered no evidence confirming that Smith ever received a copy of the Financial Guarantee on August 28 or 29 from [the buyer's escrow agent] and therefore questions whether Smith had a copy to send to Christoffersen." Posner further surmised that hand-delivery of the Financial Guarantee was "unlikely" and "implausible" because of the distance between the two offices and because it appeared "that fax transmissions were the method of choice for transmitting documents" between Equity and the buyer's escrow agent. We agree with the trial court that Posner's assertions, even when viewed in the light most favorable to Posner, are insufficient speculation to evidence a material factual dispute in light of the sworn testimonies of both Smith and Christoffersen.

¶ 13 We also see no error in the trial court's determination that Posner's second factual contention, that he never gave informed consent to close the transaction, is immaterial with respect to Equity's liability. Smith testified that Christoffersen conveyed Posner's approval of the Financial Guarantee to her and instructed her to close the transaction. Christoffersen similarly testified that she told Smith that Posner had approved the details of the sale and authorized the closing. Because we conclude that Christoffersen had authority to act on Posner's behalf, as will be discussed more thoroughly below, whether Posner actually approved the documents is factually immaterial with respect to Equity.

■ ¶ 14 Posner further argues that, even if the material facts are undisputed, Equity was not entitled to judgment as a matter of law because Christoffersen had no authority to act on his behalf at the closing. "Under agency law, an agent cannot make its principal responsible for the agent's actions unless the agent is acting pursuant to either actual or apparent authority." *Zions First Nat'l Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1094 (Utah 1988). We conclude that Christoffersen possessed both actual and apparent authority to act on Posner's behalf.

■ ¶ 15 As the supreme court has explained:

> Actual authority incorporates the concepts of express and implied authority. Express authority exists whenever the principal directly states that its agent has the authority to perform a particular act on the principal's behalf. Implied authority, on the other hand, embraces authority to do those acts which are incidental to, or are necessary, usual, and proper to accomplish or perform, the main authority expressly delegated to the agent. Implied authority is actual authority based upon the premise that whenever the performance of certain business is confided to an agent, such authority carries with it by implication authority to do collateral acts which are the natural and ordinary incidents of the main act or business authorized. This authority may be implied from the words and conduct of the parties and the facts and circumstances attending the transaction in question.

*Id.* at 1094–95 (citations omitted). In evaluating whether Posner had given Christoffersen actual authority, we examine Posner's actions from Christoffersen's perspective. *See Diston v. EnviroPak Med. Prods., Inc.*, 893 P.2d 1071, 1076 (Utah Ct.App.1995) ("[A]n analysis of actual authority focuses on the acts of the principal from the agent's perspective.").

¶ 16 It is undisputed that Posner contracted with Coldwell and agreed that Christoffersen would be his real estate agent for the sale of his property. In addition, Posner

---

4. The evidence described herein is primarily testimony taken during depositions.

testified that Christoffersen was his "agent ... to make sure that [the transaction] closed," and that Christoffersen "was the one that was negotiating back and forth with the [REPC] as far as making sure that we had a surety bond and how much it was and everything else." Moreover, Posner stated that he "directed ... Christoffersen ... to make sure that the buyer supplied a 'surety bond' at closing," clarifying that "[i]n making this instruction, [he] expected ... Christoffersen ... to act on [his] behalf ... includ[ing] the expectation that, if Christoffersen ... had any doubts or questions as to the legitimacy of the buyer's surety bond, [she] would notify [him] of the problem." [5]

¶ 17 Viewing these admissions from Christoffersen's perspective, we believe Christoffersen had actual authority, either express or implied, to act on Posner's behalf. Namely, Posner directly stated that Christoffersen had the authority to ensure "that [the transaction] closed" and "that the buyer supplied a 'surety bond' at closing." Posner further testified that he expressly authorized Christoffersen to use her professional judgment to evaluate "the legitimacy of the buyer's surety bond" and to inform him if it appeared to be inadequate. In addition, it is reasonable to imply Christoffersen's authority to instruct Equity to close the transaction as a "collateral act[ ] which [is] the natural and ordinary incident[ ] of" selling real estate, *Zions First Nat'l Bank*, 762 P.2d at 1095, especially in light of the facts that Posner returned to his home in Florida after signing his portion of the closing documents and that he repeatedly communicated with Christoffersen regarding whether the transaction had closed, *see id.* (stating that "authority may be implied [not only] from the words and conduct of the parties [but also from] the facts and circumstances attending the transaction in question").

¶ 18 Furthermore, even if Christoffersen lacked actual authority to close the transaction, we determine that she had apparent authority to do so. Apparent authority is appropriately found where "the acts or conduct of the principal ... creates an appearance which causes a third party ... to reasonably believe that a second party ... has authority to act on the principal's behalf." *Distor*, 893 P.2d at 1076. Thus, "an analysis of apparent authority focuses on the acts of the principal from a third party's perspective." *Id.* The following undisputed facts are of importance to our apparent authority analysis: (1) Posner retained Christoffersen as his real estate agent; (2) Posner testified that he expected Christoffersen to negotiate the terms of the contract on his behalf and to ensure that an adequate surety bond was in place; (3) Posner signed his closing documents and returned to Florida before the transaction closed; (4) Posner maintained communication with both Smith and Christoffersen until he was assured that the transaction had closed; and (5) Posner never notified Equity of any limitations on Christoffersen's agency. We conclude that based on Posner's actions and conduct, Christoffersen had authority to act on Posner's behalf at closing. Consequently, there are no material issues of fact regarding Christoffersen's authority to act as Posner's agent or Equity's justifiable reliance on that authority in closing the transaction.

¶ 19 Having determined that there was not a material issue of fact precluding summary judgment and that Christoffersen had authority to act on Posner's behalf, we review for correctness whether Equity was entitled to judgment as a matter of law. Posner claimed that Equity breached a fiduciary duty owed to him by closing the transaction without a proper surety bond. However, as Posner concedes in his briefing, "the core of the escrow agent's fiduciary duty is to

---

5. In his reply brief, Posner points out that he attempted to qualify this statement by stating that he did not expect Christoffersen to review the surety bond in any way. However, this "clarification" actually came moments before the language quoted in the text, and thus could not have clarified the later statement. Posner also cites to his own affidavit, submitted to support his memorandum opposing Equity's summary judgment motion, arguing that he clarified Christoffersen's role therein. This similarly is not proper. *See Webster v. Sill*, 675 P.2d 1170, 1172–73 (Utah 1983) ("[W]hen a party takes a clear position in his deposition, that is not modified on cross-examination, he may not thereafter raise an issue of fact by his own affidavit which contradicts his deposition, unless he can provide an explanation of the discrepancy.").

follow the escrow instructions." Stated another way, it would be illogical if following the instructions of the one to whom you owe a fiduciary duty could constitute a breach of that same duty.[6] Although Posner insists that he did not personally authorize the closing, we have determined that his agent, Christoffersen, did. Because Posner is bound by Christoffersen's actions, and Christoffersen instructed Equity to close the transaction, we conclude that Equity did not breach its fiduciary duty owed to Posner and, accordingly, that summary judgment was appropriately granted.

## B. Posner's Claims Against Coldwell

¶ 20 Posner also argues that the trial court erred in granting summary judgment in favor of Coldwell because the trial court made an erroneous legal determination that expert testimony is required to prove a breach of fiduciary duty based on the allegations against Coldwell. As stated earlier, when reviewing a trial court's grant of summary judgment we review the court's legal determinations for correctness, affording the trial court no deference. *See Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600.

¶ 21 Under Utah law, expert testimony may be necessary to "establish[ ] the standard of care required in cases dealing with the duties owed by a particular profession," especially "where the average person has little understanding of the duties owed" by the particular profession at issue, or the "case[ ] involv[es] complex ... allegations." *Preston & Chambers, P.C. v. Koller*, 943 P.2d 260, 263 (Utah Ct.App.1997) (internal quota-

tion marks omitted). Furthermore, "expert testimony may be unnecessary where the propriety of the defendant's conduct is within the common knowledge and experience of the lay[person]." *Id.* at 263–64.

¶ 22 Coldwell argues that the transaction at issue was well beyond the common knowledge and experience of the reasonable layperson. In particular, Coldwell points to the partial seller financing, the requirement of a surety bond, Posner's out-of-state residence, and the split closing dates, and contends that these facts make Posner's breach of duty claim beyond the common understanding of a layperson without the aid of an expert. Posner, on the other hand, argues that the administrative rules make clear what duties are owed by a broker to his or her principal. However, Posner fails to identify which administrative rules he is referring to and makes no attempt to analyze these rules. Continuing, Posner cites two Utah cases and argues that they "provide straightforward guidance on when the duties of care and disclosure are breached." However, we find these cases to be factually distinguishable and unpersuasive.[7] Because we have determined that a layperson could not have readily comprehended Coldwell's fiduciary duties in this complex transaction, we agree with the trial court that expert testimony is necessary to prove Coldwell's alleged breach of those duties.

¶ 23 Posner also urges us to reverse the trial court's decision to exclude the testimony of his sole expert, arguing that exclusion of the testimony was an egregious sanction entered without the requisite factual

---

**6.** In fact, as was alluded to at oral argument on appeal, it may well have been a breach of fiduciary duty had Equity not closed the transaction as instructed by Posner or his agent.

**7.** Posner cites *Reese v. Harper*, 8 Utah 2d 119, 329 P.2d 410 (1958), for the proposition that a real estate agent breaches duties of care and disclosure when the agent "fail[s] to inform and explain to the seller fully of all the facts material to the transaction." The facts of *Reese* differ significantly from the present facts. Namely, *Reese* hinged on the fact that Reese had been employed by Harper to sell his real estate for $45,000, approximately $15,000 of which would pay off encumbrances on the property, leaving Harper with a net profit of $30,000. *See id.* at

411. Reese presented Harper with an offer of $30,000 that appeared to have the buyer pay off the encumbrances, but which actually had Harper pay them off, thus bringing Harper's net sale total to approximately $15,000. *See id.* at 411–12. Because Reese failed to disclose this fact—a fact that decreased Harper's price by roughly half—the *Reese* court affirmed the jury's determination that Reese had breached a fiduciary duty to Harper. *See id.* at 413. Posner also draws on *Phillips v. JCM Development Corp.*, 666 P.2d 876 (Utah 1983), which refers to the duties of a real estate agent to his principal. As with *Reese*, the facts in *Phillips* are not as complex as in this case and neither of the cases address the issue of when an expert witness is required.

findings.[8] As a general rule, "[t]rial courts have broad discretion in managing the cases assigned to their courts." *Id.* at 262 (alteration in original) (internal quotation marks omitted). To this end, rule 16 of the Utah Rules of Civil Procedure allows trial courts discretion to establish scheduling orders setting discovery deadlines, *see* Utah R. Civ. P. 16(b)(3), and enter statutorily authorized sanctions "[i]f a party or a party's attorney fails to obey a scheduling ... order," *id.* R. 16(d). Rule 37 of the Utah Rules of Civil Procedure delineates available sanctions for failure to comply with such an order. *See id.* R. 37. Rule 37(f) states that "[i]f a party fails to disclose a witness, document, or other material as required ... that party *shall not be permitted to use the witness, document or other material* at any hearing unless the failure to disclose is harmless or the party shows good cause for the failure to disclose." *Id.* R. 37(f) (emphasis added). This language mandates that a trial court exclude late-filed evidence, but also gives a trial court discretion to employ an alternative sanction "in addition to or in lieu of" exclusion. *Id.; see Rukavina v. Sprague,* 2007 UT App 331, ¶ 8, 170 P.3d 1138. Trial courts therefore have discretion to determine whether good cause excuses tardiness or whether prejudice would result from allowing the disputed evidence at trial. *See* Utah R. Civ. P. 37(f).

¶ 24 The trial court set December 12, 2006, as the deadline for designating expert witnesses. Posner did not disclose his expert witness to the court until December 26, 2006. The trial court recognized that Posner's designation was tardy, and determined that he made no showing of good cause justifying his untimely disclosure.[9]

¶ 25 On appeal, Posner contends there was a tacit agreement between the parties staying the discovery deadlines until the court-ordered mediation was completed. He fur-

ther asserts that in light of this agreement his designation was not untimely, or, in the alternative, his mistaken reliance on this agreement constitutes good cause for missing the deadline. The trial court disagreed, finding that Posner had missed the deadline, no agreement to ignore the discovery deadlines existed, and Posner had not otherwise shown good cause for his untimely filing. The record supports these findings, evidencing that Posner made no attempt to designate this expert during the nearly three and one-half years the case had been pending, and in fact, did not designate his expert until two weeks after Coldwell moved for summary judgment following expiration of the discovery deadlines. We thus conclude that the trial court acted within its discretion in finding that Posner had failed to show good cause for the tardiness of his designation, and accordingly, see no error in the trial court's decision to exclude the expert. *See id.* Consequently, because expert testimony is required in this case, we conclude that the trial court correctly granted Coldwell's motion for summary judgment.

## II. Attorney Fees

¶ 26 Posner contends that the trial court erred in awarding Coldwell its attorney fees pursuant to the Listing Agreement because he did not sue for breach of that contract, arguing that his sole claim against Coldwell—breach of fiduciary duty—was based on tort law. "Whether attorney fees are recoverable in an action is a question of law, which we review for correctness." *Valcarce v. Fitzgerald,* 961 P.2d 305, 315 (Utah 1998). Generally speaking, in Utah, "attorney fees cannot be recovered by a prevailing party unless a statute or contract authorizes such an award." *Utahns for Better Dental Health–Davis, Inc. v. Rawlings,* 2007 UT 97, ¶ 5, 175 P.3d 1036.

---

8. Posner briefly alludes to a violation of his due process rights, claiming that the trial court dismissed his case as a sanction and thereby denied him his right to a jury trial. However, Posner inadequately briefs this challenge. *See Valcarce v. Fitzgerald,* 961 P.2d 305, 313 (Utah 1998). In addition, Posner mischaracterizes the trial court's actions: The trial court did not dismiss Posner's action as a sanction; rather, it excluded his expert's testimony because disclosure of the witness's identity and report was untimely. It was the absence of expert testimony, not sanction by the trial court, that led to dismissal of Posner's claim.

9. The trial court also determined that Coldwell would suffer prejudice if the testimony or report of Posner's expert was allowed at trial. Posner does not dispute that determination on appeal, arguing instead that prejudice is not required.

¶ 27 Posner retained Coldwell to sell his property and, in doing so, entered into the Listing Agreement. The Listing Agreement states that "in case of the employment of an attorney *in any matter arising out of this Listing Agreement* (including a sale of the Property) the prevailing party shall be entitled to receive from the other party all costs and reasonable attorney fees." (Emphasis added.) The events leading to Posner's lawsuit against Coldwell relate directly to the sale of Posner's property. As a result, Posner's suit "aris[es] out of th[e] Listing Agreement." It is true, as Posner asserts, that "[i]n Utah, a claim for breach of fiduciary duty is an independent tort that, on occasion, arises from a contractual duty." *See Norman v. Arnold*, 2002 UT 81, ¶ 35, 57 P.3d 997. However, this does not change our analysis because the attorney fee provision in the Listing Agreement does not limit its applicability to contract claims. Or, as the trial court stated, even if we "construe[ Posner's] claim to be brought in tort, [he] cannot escape the clear applicability of the Listing Agreement and the Attorney[ ] Fees provision contained therein to this lawsuit." Because Coldwell was the prevailing party at the trial level, we conclude that the trial court did not err in awarding Coldwell its attorney fees pursuant to the Listing Agreement.

## CONCLUSION

¶ 28 We find no error in the trial court's grant of summary judgment in favor of Equity because there were no genuine disputed material facts and the undisputed facts demonstrate that Equity simply followed the instructions of Posner's agent, who was authorized to act on Posner's behalf, in closing the transaction. We also determine that the trial court did not err or abuse its discretion by excluding the testimony of Posner's designated expert witness, and correctly granted summary judgment for Coldwell because expert testimony was necessary to prove Posner's breach of fiduciary duty claim. And finally, we conclude that the trial court did not err in awarding Coldwell its attorney fees pursuant to the Listing Agreement, regardless of whether Posner's suit is construed as one in tort or contract law. Affirmed.

¶ 29 WE CONCUR: RUSSELL W. BENCH and GREGORY K. ORME, Judges.