2010 UT App 171

**Wayne L. WELSH and Carol Welsh, Plaintiffs and Appellants,**

v.

**HOSPITAL CORPORATION OF UTAH dba Lakeview Hospital, Defendant and Appellee.**

No. 20090361–CA.

Court of Appeals of Utah.

June 24, 2010.

Rodney G. Snow, Matthew A. Steward, and Aaron D. Lebenta, Salt Lake City, for Appellants.

Tawni J. Anderson, Stephen D. Alderman, and Shelley M. Doi, Salt Lake City, for Appellee.

Before Judges DAVIS, THORNE, and VOROS.

## OPINION

VOROS, Judge:

¶ 1 We granted interlocutory appeal to review the trial court's order (1) denying the plaintiffs' Motion for Enlargement of Time to designate expert witnesses and submit expert reports, and (2) excluding the plaintiffs' experts from testifying at trial as a sanction for failure to adhere to discovery deadlines. We reverse and remand.

## BACKGROUND

¶ 2 Plaintiffs Wayne L. Welsh and Carol Welsh (the Welshes) filed suit in February 2006 against Lakeview Hospital (Lakeview) claiming negligence and loss of consortium for injuries Mr. Welsh allegedly suffered while being treated there. Mr. Welsh sought treatment at Lakeview for temporary loss of consciousness, dizziness, and nausea. The Welshes allege that, during treatment, Mr. Welsh was left alone on an elevated examination table and fell. They further allege that, as a result, he suffered a fractured skull and a subdural hematoma and lapsed into a coma. Mr. Welsh underwent brain surgery and remained in a coma for several days. The Welshes allege that Mr. Welsh has suffered extensive brain damage, requiring significant continued medical care.

¶ 3 In August 2006, the trial court entered its first scheduling order. This scheduling order set deadlines for the completion of discovery, including designation of expert witnesses and submission of initial expert reports. By stipulation of the parties, the order was amended in May 2007 and again in February 2008 to allow more time for expert discovery. In June 2008, the Welshes' attorney, Nathan Wilcox, moved from the firm of Anderson & Karrenberg to the firm of Clyde Snow & Sessions, taking this case with him. On September 10, 2008, the parties submitted a proposal to amend the scheduling order for a third time. The trial court initially denied it. But after a telephone conference on September 30, 2008, the trial court entered a third amended scheduling order. The order warned that the case would be dismissed if it did not move forward:

[T]he case is 2 1/2 years old and we have received the 4th scheduling order. The Court will dismiss this case if it doesn't start moving forward. If the Court doesn't see some action, it will notice the case for Pretrial and determine what has been done and if it isn't moving forward, the Court will dismiss the action.

¶ 4 This scheduling order required the Welshes to submit their initial expert reports and designations no later than December 1, 2008. On November 26, 2008, Matthew Steward and Rodney Snow of Clyde Snow & Sessions entered their appearances as new counsel for the Welshes. On the same day and despite the court's warning, they filed a motion seeking an enlargement of time until January 9, 2009, to submit expert reports and designations. That motion stated two grounds: (1) the Welshes had new counsel and (2) Lakeview had contributed to the delay in the case by not making its employees available for depositions. The motion did not seek to extend the deadlines for submission of rebuttal expert reports or completion of expert discovery, or to affect the scheduling of trial.

¶ 5 On December 1, 2008, Lakeview filed a motion for summary judgment, arguing that no experts had been timely designated and that without expert testimony the Welshes would be unable to establish a prima facie case of negligence. The trial court later denied this motion on the ground that although the Welshes could not call expert witnesses at trial, they could pursue a res ipsa loquitur theory of liability.

¶ 6 While these motions were pending, the Welshes submitted their expert designations. They designated three experts: (1) a certified physician to testify to the standard of care and its alleged violation by Lakeview; (2) a life care specialist to testify to Mr. Welsh's future injury-related expenses; and (3) a forensic accountant to testify to Mr. Welsh's economic loss as a result of the injury.

¶ 7 On December 29, 2009, the court clerk made the following entry on the court's docket: "[The Welshes'] Motion to Enlarge Time is granted, last time. He needs to submit an order. I called his office this date." Based on this phone call and docket entry, the Welshes submitted a proposed order extending their expert cutoff date to January 9, 2009. On January 9, 2009, the Welshes submitted their expert reports.

¶ 8 On January 22, 2009, nearly two weeks after the Welshes had submitted their expert reports, the trial court entered an order denying their motion for an enlargement. In addition, citing rule 37(b)(2) of the Utah Rules of Civil Procedure, the court barred any use of the Welshes' "belated expert discovery materials at trial" as a sanction for missing the December 1, 2008 deadline. The Welshes filed a Motion for Relief from this order. The trial court denied their motion in an order entered April 14, 2009. The April 14 order reaffirmed the court's earlier rulings and, for the first time, ruled that the Welshes' "failure to comply with the discovery order was willful in that the plaintiffs' failure to comply was not due to involuntary noncompliance." We granted review of this interlocutory order.

## ISSUE AND STANDARD OF REVIEW

¶ 9 The Welshes contend that the trial court erred by denying their motion to extend the deadline and by excluding their experts from testifying. "Trial courts have broad discretion in managing the cases assigned to their courts." *Posner v. Equity Title Ins. Agency, Inc.*, 2009 UT App 347, ¶ 23, 222 P.3d 775 (alteration and internal quotation marks omitted). As part of that discretion, rule 16 of the Utah Rules of Civil Procedure allows the trial court to set dates for the completion of discovery. *See* Utah R. Civ. P. 16(b)(3). Rule 16 also authorizes the trial court to impose the sanctions listed in rule 37(b)(2) of the Utah Rules of Civil Procedure if a party "fails to obey a scheduling or pretrial order." *Id.* R. 16(d). Under rule 37, excluding evidence is one of the sanctions that may be imposed on a party who violates rule 16: "If a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may take such action in regard to the failure as are [sic] just, including . . . prohibit the disobedient party . . . from introducing designated mat-

ters in evidence...." *Id.* R. 37(b)(2), (b)(2)(B). However, "[b]efore a trial court can impose discovery sanctions under rule 37, the court must find on the part of the noncomplying party willfulness, bad faith, ... fault, or persistent dilatory tactics frustrating the judicial process." *Morton v. Continental Baking Co.*, 938 P.2d 271, 274 (Utah 1997) (citations and emphasis omitted). Once that finding is made, "the choice of an appropriate discovery sanction is primarily the responsibility of the trial judge," *id.* (internal quotation marks omitted), and we will then only disturb that discovery sanction if "abuse [is] *clearly* shown." *Kilpatrick v. Bullough Abatement Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957 (alteration in original).

¶ 10 However, a trial court's discretion to exclude expert witness testimony is not absolute. "Excluding a witness from testifying is ... extreme in nature and ... should be employed only with caution and restraint." *Berrett v. Denver & Rio Grande W. R.R.*, 830 P.2d 291, 293 (Utah Ct.App. 1992) (internal quotation marks omitted). "On occasion, justice and fairness will require that a court allow a party to designate witnesses, conduct discovery, or otherwise perform tasks covered by a scheduling order after the court-imposed deadline for doing so has expired." *Boice v. Marble*, 1999 UT 71, ¶ 10, 982 P.2d 565.

## ANALYSIS

¶ 11 The Welshes challenge the trial court's finding of willfulness on two grounds. They first argue that the trial court's reliance on its finding of willfulness is "improper" because the April 14 finding of willfulness was an "after-the-fact" justification for the sanction imposed by the court on January 22. They also argue that the facts do not support a finding of willfulness. Lakeview counters that the trial court need not make a finding of willfulness at all and that, in any event, the facts here demonstrate willfulness.

¶ 12 The willfulness standard in this context is low. Wilfulness has been interpreted to mean "any intentional failure as distinguished from involuntary noncompli-

ance. No wrongful intent need be shown." *Utah Dep't of Transp. v. Osguthorpe*, 892 P.2d 4, 8 (Utah 1995). And a trial court need not specifically state that willfulness, bad faith, fault, or persistent dilatory tactics are present to impose sanctions under rule 37(b)(2). *See Preston & Chambers, PC v. Koller*, 943 P.2d 260, 263 (Utah Ct.App.1997) (affirming sanctions for dilatory tactics where the trial court did not specifically articulate a finding that dilatory tactics were present but where findings supporting that conclusion were located in the record). We will affirm so long as "the findings appear in the lower court's opinion or elsewhere to sufficiently indicate the factual basis for the ultimate conclusion." *Id.* Here, however, we need not resolve the question of willfulness, because whether the Welshes' noncompliance was voluntary or not, we conclude that the trial court abused its discretion in its "choice of an appropriate discovery sanction," *See Morton*, 938 P.2d at 275.

¶ 13 A number of factors separate this case from others of this type. First, this is not a case where the sanctioned party "assume[d] that the trial judge had some duty to allow [it] to violate the discovery orders for any or no reason." *DeBry v. Cascade Enters.*, 879 P.2d 1353, 1361 (Utah 1994). The Welshes offered reasons for the extension. They pointed out that new counsel had entered their appearance days before the expert witness cutoff date and that Lakeview had been uncooperative in discovery. Given the circumstances of this case, neither reason is compelling. But the record does show that the Welshes were not solely responsible for the delay in this case. Lakeview had requested to amend the scheduling order at least once and had stipulated to all previous amended scheduling orders. In fact, Lakeview's counsel conceded at oral argument that "this case was not promptly moved along by either party." [1]

¶ 14 In addition, the Welshes did not simply ignore the trial court's scheduling order; they moved to amend it. They moved before December 1 to extend the December 1 expert cutoff date. *See generally Arnold v.*

---

1. Lakeview's counsel did add, "However, it was    [the Welshes'] burden to move this case along."

*Curtis,* 846 P.2d 1307, 1310 (Utah 1993) (affirming the exclusion of untimely submitted evidence, in part, because the sanctioned party "did not at any time ask to be relieved of the time requirement of the [scheduling] order").

¶ 15 Moreover, the Welshes' motion did not seek to extend the deadline for completion of expert discovery or the certification of readiness for trial. Those deadlines remained unaffected by their motion. The purpose of requiring parties to disclose witnesses by a certain date is to allow the lawsuit to proceed in an orderly way and to avoid unnecessary trial delays. *See Turner v. Nelson,* 872 P.2d 1021, 1023–24 (Utah 1994). The trial court stated here that the scheduling order was designed "to move [the case] along." However, by the time the trial court denied the Welshes' motion and barred their experts' testimony, the case had moved along: the Welshes' expert designations and reports had been submitted and no further delays to discovery or the trial were contemplated.

¶ 16 Significantly, Lakeview has never claimed that granting the Welshes' motion would result in prejudice. In fact, Lakeview questions whether prejudice is even a relevant consideration. While rule 37 does not expressly mention prejudice, cases from the supreme court and this court treat it as a relevant consideration. *See, e.g., DeBry,* 879 P.2d at 1361 (noting that the non-sanctioned party would be prejudiced if the untimely-designated experts were allowed to testify); *Normandeau v. Hanson Equip., Inc.,* 2007 UT App 382, ¶ 26, 174 P.3d 1 (affirming the admission of untimely designated experts, in part, because the non-sanctioned party was not prejudiced), *rev'd on other grounds,* 2009 UT 44, 215 P.3d 152. Requiring a party to designate expert witnesses by a certain date allows the opposing party time "to prepare for trial by deposing witnesses, planning for effective cross-examination, and obtaining rebuttal testimony." *DeBry,* 879 P.2d at 1361. Consequently, prejudice is minimized where the opposing party has time to depose those witnesses, designate rebuttal witnesses, and prepare for trial. *See Normandeau,* 2007 UT App 382, ¶ 26, 174 P.3d 1; *see also A.K. & R.*

*Whipple Plumbing & Heating v. Aspen Constr.,* 1999 UT App 87, ¶ 37, 977 P.2d 518 (stating that a party was not prejudiced by the opposing party's noncompliance with a scheduling order because it had "the information necessary to adequately prepare for trial"). That was the situation here. Notwithstanding the Welshes' delay in designating experts, Lakeview had time to depose those experts, designate rebuttal experts, and otherwise prepare for trial. In fact, Lakeview conceded that it declined to stipulate to the third amended scheduling order solely because of the trial court's directive to move the case along, not because it would suffer any prejudice from the extension.

¶ 17 While Lakeview will suffer no prejudice if the Welshes' experts are allowed to testify at trial, the prejudice to the Welshes if their experts are excluded is potentially devastating. Indeed, once the December 1 deadline passed without the Welshes' having designated their experts, Lakeview filed a motion for summary judgment on the ground that "[i]n the absence of expert testimony, the Court must presume that Lakeview complied with the standard of care and did not cause any injury." In other words, according to Lakeview, expert witnesses were essential to the Welshes' case. The trial court denied the summary judgment motion on the ground that the Welshes could proceed to trial on a res ipsa loquitur theory of liability. But to prevail at trial, the Welshes must establish damages as well as liability. *See White v. Blackburn,* 787 P.2d 1315, 1319 (Utah Ct. App.1990) (listing damages as an essential element of negligence). Two of the three excluded experts were to testify concerning damages—a life-care specialist to testify to the impact of Mr. Welsh's injuries on his daily life and a forensic accountant to quantify his economic loss. If otherwise admissible, testimony of this type could assist the jury to determine damages should Lakeview be found liable. *See Balderas v. Starks,* 2006 UT App 218, ¶ 27, 138 P.3d 75 ("Expert testimony is helpful when the subject is not within the knowledge or experience of the average individual." (internal quotation marks omitted)).

¶ 18 Finally, the most novel aspect of this case is the docket entry and phone call from the court clerk informing the Welshes that their motion for an enlargement of time had been granted. The Welshes filed the motion before the December 1 deadline. The parties briefed the issue, and the Welshes filed a request to submit for decision. While the motion was pending, they designated their experts. On December 29, the trial court's clerk made a docket entry indicating that the Welshes' motion was granted, notified the Welshes that their motion was granted, and directed them to submit a proposed order extending the expert cutoff date to January 9. In reliance on this communication with the court clerk, the Welshes prepared a proposed order to which Lakeview stipulated as to form. More significantly, they "spent considerable time and expense completing their expert reports by what they believed to be the new January 9, 2009 deadline." The parties now advance conflicting views of the precise legal status of this docket entry. However, the importance of the docket entry and the clerk's phone call here does not depend on their precise legal effect. Docket entries and phone calls from court clerks are features of the day-to-day litigation process. The smooth functioning of that process requires that attorneys are able to reasonably rely on such routine communications and not merely mark time until a formal order is signed and entered.

¶ 19 In sum, the trial court's discretion, while expansive, see *Morton v. Continental Baking Co.*, 938 P.2d 271, 275 (Utah 1997), is not unlimited, see *Berrett v. Denver & Rio Grande W. R.R.*, 830 P.2d 291, 293 (Utah Ct.App.1992). The factors at work here include the following: the case was nearly three years old; four scheduling orders had been entered; both parties had contributed to discovery delays; the parties had been warned that no further discovery extensions would be granted and that if the case did not move forward it would be dismissed; new counsel, members of predecessor counsel's firm, entered their appearance five days before December 1, the date expert reports and designations were due; that same day new counsel filed a motion to extend the expert witness cutoff date to January 9; the requested extension would not have affected the trial date; on December 17, the Welshes designated their experts; on December 29, the court clerk made an entry on the court's docket indicating that the Welshes' motion had been granted and that the clerk had called the Welshes' counsel and directed them to submit a proposed order; the Welshes' counsel submitted a proposed order, which Lakeview's counsel approved as to form; in reliance on the clerk's phone call, the Welshes spent considerable time and expense in completing their expert reports, which they filed by the new deadline, January 9; Lakeview suffered no prejudice as a result of the thirty-nine-day delay, whereas the Welshes' ability to prove liability, and especially damages, could be devastated by the exclusion of their expert witnesses. Notwithstanding the trial court's broad discretion, and with due consideration for its commendable desire to move this case forward, the foregoing factors, taken as a whole, constrain us to conclude that the trial court abused its discretion in excluding the Welshes' expert witnesses from trial. *See generally Boice v. Marble*, 1999 UT 71, ¶ 11, 982 P.2d 565 (holding the trial court abused its discretion in light of all the surrounding circumstances).

## CONCLUSION

¶ 20 Accordingly, the order of the trial court is reversed and the case remanded for further proceedings.

¶ 21 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and WILLIAM A. THORNE JR., Judge.