**2014 UT App 243**

# THE UTAH COURT OF APPEALS

BRADLEY R. CALLISTER,
Plaintiff and Appellant,
*v.*
SNOWBIRD CORPORATION,
Defendant and Appellee.

Opinion
No. 20130269-CA
Filed October 17, 2014

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 090921989

J. Scott Cottingham, Attorney for Appellant

Adam Strachan, Attorney for Appellee

SENIOR JUDGE PAMELA T. GREENWOOD authored this Opinion, in
which JUDGE JOHN A. PEARCE and SENIOR JUDGE RUSSELL W.
BENCH concurred.[1]

GREENWOOD, Senior Judge:

¶1      Bradley R. Callister appeals from the district court's grant of
summary judgment in favor of Snowbird Corporation. Callister
argues that summary judgment was inappropriate because expert
testimony was not necessary to pursue his claims and because his
reliance on the doctrine of res ipsa loquitur should have been
sufficient to withstand summary judgment. He further argues that

---

1. The Honorable Pamela T. Greenwood and Russell W. Bench,
Senior Judges, sat by special assignment as authorized by law. *See
generally* Utah R. Jud. Admin. 11-201(6).

if expert testimony was required, then the district court abused its discretion when it refused to extend the discovery deadlines so that he could designate an appropriate expert witness.

¶2     For the reasons stated below, we affirm the district court's grant of summary judgment in favor of Snowbird.


BACKGROUND

¶3     On January 1, 2006, Callister was skiing at Snowbird, a ski resort, with a friend.[2] At one point, when he was near tram tower #3 but outside the ropes surrounding the tower, Callister stopped to take off his goggles and remove an irritant from his eye. He did not look to see if a tram was approaching. While he was stopped and facing uphill, the tram approached him from behind and the tram, or something hanging beneath the tram, hit him. The impact threw Callister forward toward the tower and he landed face down in the snow. Callister was in great pain, felt the onset of a massive headache, experienced vision problems, had difficulty breathing, and nearly passed out. Callister was able to slowly ski down the mountain, and his friend transported him to the hospital. There were no witnesses to the incident.

¶4     On December 30, 2009, Callister filed suit against Snowbird, alleging causes of action for negligence, gross negligence, premises liability, respondeat superior, and negligent supervision. In essence, his argument was that Snowbird had a duty to exercise reasonable care and had "negligently and carelessly breached that duty by failing to rope off a larger area around tower #3, failing to put up signs warning that the tram passes so low that it can hit skiers, and failing to adequately dig out the snow where [Callister] got hit." An Acceptance of Service by Snowbird was filed a few months later. On January 3, 2011, after about a year had passed without further filings, the district court issued a notice of order to

---

2. "When reviewing summary judgment, we recite the facts in a light most favorable to the nonmoving party." *Kilpatrick v. Wiley, Rein & Fielding*, 909 P.2d 1283, 1286 (Utah Ct. App. 1996).

show cause why the case should not be dismissed. At the hearing on the order, which was held on March 14, 2011, the parties presented a Stipulated Case Management Order that the district court signed and entered.

¶5     The parties, however, failed to comply with the deadlines specified in the Stipulated Case Management Order, and there were no filings for yet another year. On April 3, 2012, the district court entered a second notice of order to show cause why the case should not be dismissed. After entry of this order, Callister served his initial disclosures. At the hearing on the second order to show cause, the district court ordered counsel to submit another scheduling order or a certificate of readiness for trial within sixty days to avoid dismissal of the case. An Amended Case Management Order was submitted by this deadline, and the parties thereafter actively participated in discovery.

¶6     After the deadline had passed for disclosing expert witnesses, Snowbird moved for summary judgment, arguing, among other things, that Callister's failure to designate an expert liability witness was fatal to his claims for negligence. Callister responded by arguing that because specialized knowledge was not required to establish negligence in this case, expert testimony was not necessary. He also requested, in the event the district court determined that an expert was required, that the deadline for expert witness designation be extended so that he could identify a liability expert witness. Finally, at the hearing on Snowbird's motion he argued—for the first time, and only after the absence of the doctrine's invocation was noted by Snowbird's counsel—that the doctrine of res ipsa loquitur applied and urged the district court to consider denying the motion on that ground as well.

¶7     The district court agreed with Snowbird that expert testimony was necessary before Callister could proceed on his negligence claims. It also denied Callister's request for a deadline extension, citing the "time lapse since the occurrence of the accident, combined with the procedural history of this case (which includes the Complaint being nearly dismissed on two prior occasions after Orders to Show Cause)" as its reasons for doing so.

Accordingly, it granted summary judgment to Snowbird and dismissed all of Callister's claims with prejudice.[3] The district court's ruling did not address Callister's res ipsa loquitur argument. Callister timely appealed.

ISSUES AND STANDARDS OF REVIEW

¶8    Callister argues that summary judgment should not have been granted in this case because expert testimony was not required in order to prevail on his claims for negligence. He also argues that the inference of negligence arising from the doctrine of res ipsa loquitur should have been sufficient to withstand Snowbird's motion for summary judgment. "We 'review[] a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness, and view[] the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.'" *Posner v. Equity Title Ins. Agency, Inc.*, 2009 UT App 347, ¶ 8, 222 P.3d 775 (alterations in original) (quoting *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600).

¶9    Callister also argues that the district court abused its discretion when it denied his request to extend the case management order deadlines so that he could designate an expert witness. "Trial courts have broad discretion in managing the cases before them and we will not interfere with their decisions absent an abuse of discretion. When reviewing a district court's exercise of

---

3. The district court also ruled that section 52(1)(e) of the Inherent Risks of Skiing Act did not preclude liability under the facts alleged. *See* Utah Code Ann. § 78-27-52(1)(e) (LexisNexis Supp. 2006) ("'Inherent risks of skiing' means those dangers or conditions which are an integral part of the sport of recreational, competitive, or professional skiing, including . . . impact with lift towers and other structures and their components such as signs, posts, fences or enclosures, hydrants, or water pipes . . . ."); *see also id.* § 78-27-53 (2002) ("[N]o skier may make any claim against, or recover from, any ski area operator for an injury resulting from any of the inherent risks of skiing."). That ruling is not at issue in this appeal.

discretion, we will reverse only if there is no reasonable basis for the district court's decision." *Townhomes at Pointe Meadows Owners Ass'n v. Pointe Meadows Townhomes, LLC*, 2014 UT App 52, ¶ 9, 329 P.3d 815 (citations and internal quotation marks omitted).

ANALYSIS

I. Necessity of Expert Testimony

¶10    Callister first argues that expert testimony is not needed to establish Snowbird's negligence in this case. Specifically, he argues that the jury could have relied on "[c]ommon sense" to determine that in a situation where a tram is traveling low enough to strike a skier, the ski resort has a duty to warn skiers about that danger by way of "some combination of ropes, warning signs, or digging out the snow." Callister then argues that the jury could infer from the fact that he was struck by the tram that "Snowbird did nothing" to warn him, and that because it "did nothing," there is no need for expert testimony about what Snowbird should have done. Therefore, Callister concludes that expert testimony was unnecessary. We disagree.

¶11    "[S]ummary judgment is appropriate only when 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Penunuri v. Sundance Partners, Ltd.*, 2013 UT 22, ¶ 8, 301 P.3d 984 (omission in original) (quoting Utah R. Civ. P. 56(c)). In order to recover for negligence, the plaintiff must affirmatively establish the following four elements: "(1) that the defendant owed the plaintiff a duty, (2) that the defendant breached that duty, (3) that the breach of duty was the proximate cause of the plaintiff's injury, and (4) that the plaintiff in fact suffered injuries or damages." *Warenski v. Advanced RV Supply*, 2011 UT App 197, ¶ 6, 257 P.3d 1096 (citation and internal quotation marks omitted).

¶12    With respect to the first element, under Utah law if the applicable standard of care in an action for negligence is not "'fixed by law,'" then "the determination of the appropriate standard is a

factual issue to be resolved by the finder of fact." *Berry v. Greater Park City Co.*, 2007 UT 87, ¶ 30, 171 P.3d 442 (quoting *Wycalis v. Guardian Title of Utah*, 780 P.2d 821, 825 (Utah Ct. App. 1989)). But in cases where "the standard of care . . . [is] usually not within the common knowledge of the lay juror, testimony from relevant experts is generally required in order to ensure that factfinders have adequate knowledge upon which to base their decisions." *Bowman v. Kalm*, 2008 UT 9, ¶ 7, 179 P.3d 754.

¶13    This principle is most clearly demonstrated in medical malpractice cases, where plaintiffs are almost always required to establish the applicable standard of care via expert testimony because "the nature of the [medical] profession removes the particularities of its practice from the knowledge and understanding of the average citizen." *King v. Searle Pharms., Inc.*, 832 P.2d 858, 862 (Utah 1992) (alteration in original) (citation and internal quotation marks omitted); *see also Dalley v. Utah Valley Reg'l Med. Ctr.*, 791 P.2d 193, 195–96 (Utah 1990) ("To establish the standard of care required of a physician in a particular field, breach of that standard, and proximate cause, the plaintiff is generally required to produce an expert witness who is acquainted with the standards of care in the same or a similar field as the defendant doctor."); *Hansen v. Harper Excavating, Inc.*, 2014 UT App 180, ¶¶ 10–15, 332 P.3d 969 (discussing the necessity of expert testimony in medical malpractice cases). And in cases where the plaintiff has failed to designate an expert in order to establish the applicable standard of care, summary judgment may be granted to the defendant. *See, e.g., Dikeou v. Osborn*, 881 P.2d 943, 948 (Utah Ct. App. 1994) (affirming summary judgment where plaintiffs "failed to establish a prima facie case of medical malpractice because they presented no reliable testimony to establish the appropriate standard of care"). But while this principle is most clearly demonstrated in medical malpractice cases, it is not limited to that context. Rather, its application depends upon the facts and circumstances of the individual case and may properly be applied in other, non-medical malpractice negligence cases.

¶14    For example, in *Jenkins v. Jordan Valley Water Conservancy District*, 2013 UT 59, 321 P.3d 1049, the plaintiffs' home was flooded

due to a crack in a nearby water pipe. *Id.* ¶ 4. The plaintiffs argued that the Water District had been negligent in failing to replace the pipe but failed to demonstrate the applicable standard of care via expert testimony. *Id.* ¶¶ 2, 8. The Utah Supreme Court held that the plaintiffs were required to establish the applicable standard of care through expert testimony because "[l]ay persons are not well equipped to decide whether a cast-iron pipe has gotten so old that it requires replacement." *Id.* ¶¶ 15–16. The court observed that without expert testimony on this issue, "jurors would be forced to speculate about how a reasonable water conservancy district would act," and "[s]uch speculation has no place in our courtrooms—on matters of duty, breach, or otherwise." *Id.* ¶ 21.

¶15 Following *Jenkins*, we conclude that expert testimony is necessary in cases where the jury would be unable to determine the applicable standard of care without resorting to speculation. Thus, expert testimony is necessary in any negligence case where the particularities of the alleged standard of care do not reside within the common knowledge and experience of a lay juror. *See Bowman*, 2008 UT 9, ¶ 7.

¶16 We also note that this same principle applies in both simple and gross negligence cases. "Gross negligence requires proof of conduct substantially more distant from the appropriate standard of care than does ordinary negligence." *Berry*, 2007 UT 87, ¶ 26. In other words, "most courts consider that 'gross negligence' . . . differs from ordinary negligence only in degree, and not in kind." *Black's Law Dictionary* 1134 (9th ed. 2009) (quoting *Prosser and Keeton on the Law of Torts* § 34, at 212 (W. Page Keeton et al. eds., 5th ed. 1984)). Consequently, gross negligence has the same elements as does ordinary negligence, with an additional element of egregiousness.

¶17 Two Utah cases have considered claims for gross negligence involving winter recreational activities similar to the one in this case and provide guidance regarding the need for expert testimony. First, in *Berry v. Greater Park City Co.*, 2007 UT 87, 171 P.3d 442, a skier who was injured in a ski race filed suit against the ski resort and other parties involved in the event, alleging ordinary

negligence, gross negligence, and common law strict liability.[4] *Id.* ¶ 1. The Utah Supreme Court reversed the district court's grant of summary judgment to the defendants on the gross negligence claim, observing that the standard of care applicable to a skiercross race course for a gross negligence claim had not been established by the evidence presented but that the expert testimony presented would have been sufficient to withstand summary judgment for ordinary negligence. *Id.* ¶¶ 28, 30.

¶18    In the second case, *Pearce v. Utah Athletic Foundation*, 2008 UT 13, 179 P.3d 760, the plaintiff was injured while riding a bobsled at the Utah Winter Sports Park. *Id.* ¶ 6. The district court dismissed the plaintiff's action for gross negligence due to insufficient evidence.[5] *Id.* ¶ 9. The Utah Supreme Court reversed, explaining that "[w]ithout an identified, applicable standard of care, it was error for the district court to rule on summary judgment that, as a matter of law, [plaintiff] could not show gross negligence." *Id.* ¶ 26. The court also opined in a footnote that "[i]n order to determine what a reasonable bobsled ride operator would do, the finder of fact would likely need to hear testimony from expert witnesses before it could determine the operator's deviation from the standard," presumably because "what a reasonable bobsled ride operator would do" is not within the ordinary experience or knowledge of a lay juror. *Id.* ¶ 26 n.2; *cf. Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 850, 852–53 (10th Cir. 1996) (holding that the plaintiff, who was injured skiing into a single-strand diversionary rope, could not avoid summary judgment by simply arguing that multiple ropes should have been used, and stating, "[The plaintiff] produced [o]nly speculation, not expert testimony . . . in attempting to rebut Defendant's submitted compliance with the [Ski Safety]

---

4. The plaintiff's ordinary negligence claim was dismissed because he had signed a valid Release of Liability and Indemnity Agreement. *Berry v. Greater Park City Co.*, 2007 UT 87, ¶¶ 3, 7, 171 P.3d 442.

5. As in *Berry*, the plaintiff's ordinary negligence claim was rejected because he had signed a liability release. *Pearce v. Utah Athletic Found.*, 2008 UT 13, ¶ 10, 179 P.3d 760.

Act and . . . the record [is] absent of competent evidence that the closure fell outside industry norms" (first omission and second and fourth alterations in original) (internal quotation marks omitted)).

¶19     From these cases we deduce that, in both ordinary and gross negligence cases, if the standard of care involves issues that do not fall within the common knowledge and experience of lay jurors, then expert testimony is required to establish the applicable standard of care. We further deduce that in negligence cases against ski resorts and related industries with specialized equipment and operations, expert testimony is required because an average person would not have knowledge of standards of care in those industries and thus would be "forced to speculate about how a reasonable [ski resort operator] would act." *See Jenkins v. Jordan Valley Water Conservancy Dist.*, 2013 UT 59, ¶ 21, 321 P.3d 1049.

¶20     Applying the foregoing to this case, we agree with the district court that without expert testimony, the jury would have been forced to speculate about the applicable standard of care. This is so because, in the district court's words, "the issues involved in this case such as standards regarding aerial trams, the type and size of warning ropes, and the size, content and placement of warning signs, just to name a few, are beyond the common experience of lay people." Accordingly, Callister bore the burden of establishing the applicable standard of care via expert testimony. But because he failed to do so, summary judgment in favor of Snowbird was appropriate.

¶21     Furthermore, Callister cannot avoid this evidentiary burden simply by pointing to Snowbird's alleged failure to act, as he attempted to do in his brief. In order to prevail on his negligence claims, Callister is required to prove that Snowbird breached the applicable standard of care and that its breach proximately caused his injuries. *See Warenski v. Advanced RV Supply*, 2011 UT App 197, ¶ 6, 257 P.3d 1096. Thus, regardless of whether Snowbird acted or failed to act, Callister must still establish the applicable standard of care and show how the alleged action or inaction breached that standard and caused his injuries. And because, as discussed above, that standard involves concepts and procedures that do not lie

within the knowledge and experience of a lay juror, he was required to establish the applicable standard via expert testimony. The district court, therefore, did not err in requiring Callister to provide expert testimony.

## II. Res Ipsa Loquitur

¶22    Callister next argues that it was error for the district court to grant summary judgment to Snowbird because his reliance on the doctrine of res ipsa loquitur should have been sufficient to defeat that motion. Snowbird argues that this issue has not been preserved because Callister did not plead res ipsa loquitur in his complaint or argue it in his opposition to Snowbird's summary judgment motion. Callister counters by arguing that his invocation of the doctrine during the summary judgment hearing was sufficient to preserve this issue for appeal. We agree with Snowbird.

¶23    In order to properly preserve an issue for appeal, a party must (1) raise the issue in a timely fashion, (2) raise the issue specifically, and (3) introduce supporting evidence or relevant legal authority. *Pratt v. Nelson*, 2007 UT 41, ¶ 15, 164 P.3d 366. In other words, "the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 (citation and internal quotation marks omitted).

¶24    Under Utah law, the doctrine of res ipsa loquitur is an evidentiary rule that does not need to be separately pleaded in a complaint. *See Pete v. Youngblood*, 2006 UT App 303, ¶ 28, 141 P.3d 629 (noting, adopting, and citing "the overwhelming weight of authority from other jurisdictions that hold the doctrine of res ipsa loquitur is a rule of evidence rather than a cause of action and need not be pleaded in the complaint"). Nevertheless, our supreme court has cautioned litigants that they must provide adequate notice of an intent to invoke the doctrine:

> To set out by way of inducement a situation which itself may bespeak a prima facie case of negligence and

then follow with allegations of specific negligence and allege that by "reason of such negligent acts and omissions on the part of the defendant [referring to those specifically alleged] the plaintiff was injured", etc., does not sufficiently put the defendant on notice that the plaintiff is going to rely on the situation itself to furnish any inference of negligence.

*Loos v. Mountain Fuel Supply Co.*, 108 P.2d 254, 259 (Utah 1940) (alteration in original).

¶25    In *Pete v. Youngblood*, 2006 UT App 303, 141 P.3d 629, this court reversed the district court's grant of summary judgment because the facts of that case supported an inference of negligence under the doctrine of res ipsa loquitur. *Id.* ¶ 36. This court also specifically noted that the concerns expressed in *Loos* were inapplicable because only general allegations of negligence were made in the complaint (as opposed to general and specific allegations), and because the plaintiff raised the issue in a timely manner (as opposed to after trial). *Id.* ¶ 27. The same cannot be said here.

¶26    In its memorandum decision, the district court determined that "it is agreed by the parties that the key issue [in this case] is 'what [Snowbird] should have done.'" (Second alteration in original.) And in both his complaint and in his brief, Callister made specific allegations of Snowbird's negligence: "[Snowbird] negligently and carelessly breached [its] duty by failing to rope off a larger area around tower #3, failing to put up signs warning that the tram passes so low that it can hit skiers, and failing to adequately dig out the snow where [Callister] got hit." Accordingly, under *Loos*, if Callister intended to rely on the doctrine of res ipsa loquitur *in addition to* the specific allegations of negligence contained in his complaint, he had the obligation to at least argue that theory in his opposition to summary judgment. *Loos*, 108 P.2d at 259. Otherwise, neither Snowbird nor the court would know of Callister's intention to invoke the doctrine and would instead proceed on the theory that he was going to prove

negligence by affirmative evidence, which is precisely what happened here.

¶27    Furthermore, Callister failed to raise the issue of res ipsa loquitur in a timely manner. Similar to *Loos*, where the plaintiff waited until *after* trial to raise the issue, here Callister did not raise the issue until the hearing on Snowbird's summary judgment motion, and even then it was only raised in response to Snowbird's oral observation of its absence and discussed without any analysis of supporting authorities. Accordingly, we conclude that Callister failed to meet the first and third requirements for preservation. Further, given the impromptu way in which this issue was presented to the district court, we cannot say that it had an opportunity to rule on the issue or that Callister provided adequate notice of his intention to rely on the doctrine to Snowbird. *See id.* We therefore conclude that this issue was not adequately preserved for appeal and do not address it further.

### III. Request for Deadline Extension

¶28    Finally, Callister argues that the district court should have granted his request for an extension of time to designate an expert witness given the district court's determination that expert testimony was necessary to pursue his claim.[6] If a party fails to designate an expert witness as required by rule 26(a) of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 26(a)(3),[7] rule 37(f)

---

6. The district court noted in its memorandum decision that "although [Callister] appears to request that the deadlines in the amended case management order be extended to permit his obtaining a liability expert, no Rule 60 motion has been filed." It further stated that an extension was "not appropriate."

7. The Utah Rules of Civil Procedure were amended in 2011, but these amendments are applicable only to cases filed on or after November 1, 2011. *See* Utah R. Civ. P. 1 advisory committee note ("Due to the significant changes in the discovery rules, the Supreme Court order adopting the 2011 amendments makes them

(continued...)

provides that "that party shall not be permitted to use the witness . . . at any hearing unless the failure to disclose is harmless or the party shows good cause for the failure to disclose," *id.* R. 37(f). Thus, "Utah law mandates that a trial court exclude an expert witness . . . disclosed after expiration of the established deadline unless the trial court otherwise chooses to exercise its equitable discretion." *Posner v. Equity Title Ins. Agency, Inc.*, 2009 UT App 347, ¶ 8, 222 P.3d 775; *see also Townhomes at Pointe Meadows Owners Ass'n v. Pointe Meadows Townhomes, LLC*, 2014 UT App 52, ¶ 13, 329 P.3d 815.

¶29　　Rule 37(f) also allows for the entry of the more extreme sanctions listed in rule 37(b)(2), including dismissal of a case. *See* Utah R. Civ. P. 37(f) ("In addition to or in lieu of this sanction, the court on motion may take any action authorized by Subdivision (b)(2)."). Rule 37(b)(2) states, "[T]he court in which the action is pending may take such action in regard to the failure as are just, including . . . dismiss the action or proceeding or any part thereof . . . ." The imposition of sanctions under rule 37(b)(2), however, is more restrictive and requires a finding of "willfulness, bad faith, . . . fault, or persistent dilatory tactics frustrating the judicial process" on the part of the noncomplying party. *See Welsh v. Hospital Corp. of Utah*, 2010 UT App 171, ¶ 9, 235 P.3d 791 (omission in original) (citation and internal quotation marks omitted).[8]

¶30　　Callister argues that dismissal was inappropriate because "[t]here was no willfulness, bad faith, fault, or persistent dilatory

---

7. (...continued)
effective only as to cases filed on or after the effective date, November 1, 2011, unless otherwise agreed to by the parties or ordered by the court."). Because this case was filed before that date, we apply the prior version of the applicable rules.

8. We have disavowed any implication in our prior cases that the willfulness requirement applies to all rule 37 sanctions and not just those addressed by rule 37(b)(2). *See R.O.A. Gen., Inc. v. Dai*, 2014 UT App 124, ¶ 11 n.5, 327 P.3d 1233.

tactics frustrating the judicial process." Such discussion, however, "confuses the requirements for an affirmative sanction by the district court under rule 37(b)(2)" with the refusal to grant a motion to extend the deadline for designating an expert witness. *See Townhomes*, 2014 UT App 52, ¶ 14. Here, the district court refused to grant Callister's implicit motion to extend the scheduling order's deadline for designating an expert witness. This same scenario existed in *Townhomes*, where a motion was made to amend the case management order to extend the deadline for disclosing expert witnesses. *Id.* ¶ 6. While that motion was pending, the plaintiff provided an expert affidavit and an "'amended preliminary report.'" *Id.* ¶ 7. The district court denied the motion to extend the expert report deadline, struck the expert report and accompanying affidavit, and granted summary judgment against the plaintiff on the basis that expert testimony was required in order for the plaintiff to prove its case. *Id.* ¶ 8.

¶31    On appeal, this court first addressed the district court's denial of the motion to extend deadlines, applying an abuse of discretion standard. *Id.* ¶ 9. We acknowledged the district court's conclusion that "the discovery period in this case has afforded the parties a fair and reasonable opportunity to prepare for trial and should therefore have an end," concluding that "[g]iven the pattern of delay identified by the district court," there was no abuse of discretion in denying the motion to extend the expert witness designation deadline. *Id.* ¶ 12 (internal quotation marks omitted).

¶32    In accordance with *Townhomes*, we conclude that denial of a motion to extend deadlines is not a sanction under rule 37 requiring "willfulness, bad faith, . . . fault, or persistent dilatory tactics frustrating the judicial process." *Welsh*, 2010 UT App 171, ¶ 9 (omission in original) (citation and internal quotation marks omitted); *see also Townhomes*, 2014 UT App 52, ¶ 14. Ultimately granting summary judgment because of a failure to provide a required expert witness does not change the character of the district court's action in denying the motion.

¶33    In this case, the district court noted that "given the time lapse . . . (which includes the Complaint being nearly dismissed on

two prior occasions after Orders to Show Cause), amending the case management order is not appropriate." We see no abuse of discretion in the district court's action.

CONCLUSION

¶34    The district court was correct that expert testimony was required in this case to establish a standard of care, and the district court did not exceed its discretion in refusing to extend the deadline for disclosure of expert testimony. In addition, the theory of res ipsa loquitur was not properly preserved. Accordingly, the district court's grant of summary judgment in favor of Snowbird was appropriate, and we affirm.

————