2015 UT App 131

## THE UTAH COURT OF APPEALS

ROGER BRYNER,
Plaintiff and Appellant,
*v.*
CANYONS SCHOOL DISTRICT,
Defendant and Appellee.

Opinion
No. 20130566-CA
Filed May 29, 2015

Third District Court, West Jordan Department
The Honorable Barry G. Lawrence
No. 120414267

Roger Bryner, Appellant Pro Se

Patrick L. Tanner and Paul D. Van Komen,
Attorneys for Appellee

David C. Reymann and Rachel L. Wertheimer,
Attorneys for Amicus Curiae
Utah Headliners Chapter of the Society of
Professional Journalists

JUDGE MICHELE M. CHRISTIANSEN authored this Opinion, in
which JUDGES GREGORY K. ORME and STEPHEN L. ROTH
concurred.

CHRISTIANSEN, Judge:

¶1     Roger Bryner filed a complaint in the trial court seeking to
compel the Canyons School District (the District) to produce a copy
of a video-surveillance recording taken by a security camera at
Butler Middle School. The District had determined that the video
constituted an education record and that the disclosure
requirements of the Family Educational Rights and Privacy Act

(FERPA) prohibited release of the record to Bryner without the consent of the parents of the other students shown in the video. Bryner filed a motion for summary judgment, seeking a ruling that the video was not an education record within the meaning of FERPA.

¶2 The trial court denied Bryner's motion, ruling that the record Bryner sought was an education record, that it contained the personally identifiable information of other students, and that the video was therefore subject to the disclosure requirements of FERPA. The trial court also ruled that the District had to produce a redacted version of the video but only if Bryner paid the cost of redaction. Bryner challenges these rulings on appeal. We agree with the trial court that the video is subject to FERPA, and Bryner's motion for summary judgment was thus correctly denied. Because FERPA forbids release of the unredacted video, we also agree that the District may produce only a redacted copy and that Bryner is to bear the cost of that redaction. We therefore affirm.

BACKGROUND

¶3 On October 1, 2012, Bryner's child was involved in an altercation with other students outside of a classroom in Butler Middle School. A surveillance camera recorded that incident.

¶4 Bryner filed a request with the District pursuant to the Government Records Access and Management Act (GRAMA), for "all digital video from Oct 1, 2012, 2:45-3:10 showing the exit to Room #127 at Butler Middle School, at the South East end of the building, intersection shooting to the west and north" (the Video). The District informed Bryner that disclosure of the Video was governed by FERPA. Implicit in the District's response was the determination that the Video constituted an "education record" as defined by FERPA. In its response, the District indicated that FERPA "affords parents and students who are 18 years of age or older . . . certain rights with respect to the *student's education records*," including "[t]he right to provide written consent before the school discloses *personally identifiable information . . . from the*

*student's education records*, except to the extent that FERPA authorizes disclosure without consent." (Emphasis added.) The District further explained that because the Video contained the personally identifiable information of students other than Bryner's child, the school would only release the Video to Bryner if and when it obtained written consent from all parents of the other students shown in the Video.

¶5     Bryner asked the District to reconsider his request, arguing that his request was not governed by FERPA, because the Video was not an education record. The District affirmed its original decision, stating that its "position is that [the Video] does, indeed, qualify as a student record under FERPA and cannot be accessed under [a] GRAMA request."

¶6     After the District affirmed its decision, Bryner filed a complaint against the District in the trial court. In his complaint, Bryner requested a legal determination that the District was required to produce the Video.

¶7     Bryner then filed a motion for summary judgment, requesting that the court "rule that [the Video] is not covered under FERPA and must be disclosed pursuant to a GRAMA request." In opposition, the District reiterated its position that the Video was an education record. The District asked the trial court to deny summary judgment and to "affirm [the District's] determination that [the Video] is an 'education record' subject to the disclosure restrictions of FERPA." In his reply, Bryner requested that the court find that the Video contained no "personally identifiable information" of any student, but alternatively, he argued that if the court did find that the Video contained personally identifiable information, then the court "should order the redaction or blurring [of] the faces . . . and full disclosure with those 'redactions.'"

¶8     At a hearing on Bryner's motion, the court reviewed the Video in chambers and determined that the students in the Video were "clearly identifiable . . . either by face, body shape, clothing or otherwise." The trial court denied Bryner's motion and concluded

that because other students were clearly identifiable in the Video, Bryner's GRAMA request was subject to FERPA and the District had properly denied Bryner's request to disclose an unredacted copy of the Video. In response to Bryner's request for a redacted copy of the Video, the court ordered the District to file a supplemental memorandum addressing the feasibility of and costs associated with redacting student images from the Video.

¶9    The District filed its supplemental memorandum with the court and indicated that it would cost approximately $120 to redact the other students' images from the Video. On March 5, 2013, the trial court entered an order on Bryner's request for a redacted copy of the Video:

> [Bryner] will have ten days from the date of this Order to elect to receive a copy of the redacted video and to remit payment of $120 to the District for a redacted copy of the video. The District will then have fifteen days to redact the video and submit a copy to [Bryner].
>
> If [Bryner] chooses not to elect to receive a copy of the video, or fails to pay the estimated cost by the date indicated, the matter will be dismissed.

After Bryner failed to remit payment within the ten-day deadline, the District moved to dismiss the case with prejudice. The court granted the District's motion to dismiss and denied all of Bryner's pending motions. Bryner timely appealed.

¶10    On October 22, 2013, this court requested that the Utah Headliners Chapter of the Society of Professional Journalists (Amicus) submit an amicus curiae brief "on the issue of whether a surveillance recording taken by a security camera in a school is an educational record subject to protection from disclosure under [FERPA]."

ISSUES AND STANDARD OF REVIEW

¶11   On appeal, Bryner challenges the trial court's denial of his motion for summary judgment, arguing that the court erroneously interpreted and applied FERPA when it held that the Video requested by Bryner is an education record. "An appellate court reviews a trial court's legal conclusions and ultimate grant or denial of summary judgment for correctness and views the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Orvis v. Johnson*, 2008 UT 2, ¶ 6, 177 P.3d 600 (citation and internal quotation marks omitted). Whether the Video is an education record as defined by FERPA presents a question of statutory interpretation. This court must review the trial court's interpretation of the statute for correctness, "affording no deference to the district court's legal conclusions." *Deseret News Publ'g Co. v. Salt Lake County*, 2008 UT 26, ¶ 12, 182 P.3d 372.

¶12   Bryner also challenges the court's order that he was required to pay the costs of redaction, which amount was to be remitted within ten days of the court's order. The trial court's decision requiring Bryner to pay for the cost of producing the requested record involved interpretation of GRAMA. Because the interpretation of statutes is a question of law, we review the trial court's conclusions for correctness. *Id.*

ANALYSIS

¶13   The eight issues Bryner raises on appeal can be condensed into two main arguments: (1) the trial court erred by determining that the Video was an education record subject to FERPA; and (2) the trial court erroneously ordered Bryner to pay the estimated cost of redacting the Video in order to receive a copy of that recording.

I. The Video Is an Education Record as Defined by FERPA.

¶14   Utah's Government Records Access and Management Act provides a mechanism for members of the public to inspect or

request copies of government records. Utah Code Ann. § 63G-2-201 (LexisNexis Supp. 2012). Generally, any person may inspect a public record free of charge or receive a copy of that record upon request. *Id.* § 63G-2-201(1). However, certain records are classified as nonpublic under GRAMA, and disclosure of such records may be limited by GRAMA itself or by other statutes, rules, or regulations. *Id.* § 63G-2-201(2), (5)–(6). As relevant here, GRAMA classifies as nonpublic those records "to which access is restricted pursuant to court rule, another state statute, federal statute, or federal regulation, *including records for which access is governed or restricted as a condition of participation in a state or federal program or for receiving state or federal funds*." *Id.* § 63G-2-201(3)(b) (emphasis added). Disclosure of records that fall within section 63G-2-201(3)(b) "is governed by the specific provisions of that statute, rule, or regulation." *Id.* § 63G-2-201(6)(a).

¶15 The United States Congress enacted FERPA "to protect [parents' and students'] rights to privacy by limiting the transferability of their records without their consent." *United States v. Miami Univ.*, 294 F.3d 797, 806 (6th Cir. 2002) (alteration in original) (citation and internal quotation marks omitted). Congress provides funds to those educational institutions that comply with FERPA "on the condition that, inter alia, such agencies or institutions do not have a 'policy or practice of permitting the release of education records (or personally identifiable information contained therein . . . ) of students without the written consent of [the students or] their parents.'" *Id.* (omission and alteration in original) (quoting 20 U.S.C. § 1232g(b)(1) (2000)). Thus, FERPA's requirements govern the disclosure under GRAMA of any records that fall within FERPA's reach.

¶16 After viewing the Video in chambers, the trial court ruled that because "other students were clearly identifiable in the [V]ideo—either by face, body shape, clothing or otherwise," Bryner's records request was subject to FERPA and the District had properly denied Bryner's request for a copy of the Video. Implicit in this ruling is the trial court's determination that the Video is an education record pursuant to FERPA.

¶17    Amicus and Bryner[1] contend that a surveillance recording is not an education record because "it is nonacademic in nature and, therefore, is not the type of record FERPA was meant to protect" and because "it is not maintained by an educational agency or institution as required by FERPA." The District disagrees, arguing that the Video is an education record pursuant to FERPA's plain language because the Video contains information directly related to "multiple students and is maintained by school administrators for disciplinary reasons as part of a student's education record."

¶18    This court's primary objective in interpreting the provisions of FERPA "is to give effect to Congress's intent." *See In re M.J.*, 2011 UT App 398, ¶ 27, 266 P.3d 850. "The best evidence of that intent is the plain language of the statute." *Taylorsville City v. Taylorsville City Emp. Appeal Bd.*, 2013 UT App 69, ¶ 17, 298 P.3d 1270 (citing *Summit Operating, LLC v. State Tax Comm'n*, 2012 UT 91, ¶ 11, 293 P.3d 369). In reviewing the plain language of FERPA, we assume that Congress, absent a contrary indication, used each term "advisedly and in accordance with its ordinary meaning." *See Houskeeper v. State*, 2008 UT 78, ¶ 21, 197 P.3d 636 (citation and internal quotation marks omitted). "If the ordinary 'meaning of the language is clear, we need look no further to discern [Congress's] intent.'" *In re M.J.*, 2011 UT App 398, ¶ 27 (alteration in original) (quoting *Houskeeper*, 2008 UT 78, ¶ 21).

¶19    FERPA defines education records as "those records, files, documents, and other materials which . . . contain information directly related to a student" and are "maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A) (2012).

¶20    A plain reading of FERPA's statutory language reveals that Congress intended for the definition of education records to be broad in scope. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 292 (2002) (Breyer, J., concurring) (observing that the "key language" of

---

1. Bryner incorporated all of Amicus's arguments by reference.

FERPA, including its definition of education records, is "broad and nonspecific"). Although Amicus argues that the term "education records" was intended to protect records that are academic in nature, "e.g., grades, test scores, and other records related to an individual student's academic performance," nothing in the plain language of the statute limits the application of FERPA to only *academic* records. *See State ex rel. ESPN, Inc. v. Ohio State Univ.*, 970 N.E.2d 939, 946–47 (Ohio 2012). "Notably, Congress made no content-based judgments with regard to its 'education records' definition." *Miami Univ.*, 294 F.3d at 812. Thus, this court will not infer such a limitation. *See, e.g., Honig v. Doe*, 484 U.S. 305, 324–25 (1988) (declining to read an exception into a statute because the plain language of the statute evinced Congress's intent to omit such an exception and the court was not "at liberty to engraft onto the statute an exception Congress chose not to create"), *superseded by statute on other grounds as recognized by Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036 (9th Cir. 2009). We therefore consider whether the Video satisfies the two elements of an education record set forth in the statute.

A.     The Video Contains Information Directly Related to Students.

¶21     First, to qualify as an education record, the record must "contain information directly related to a student." 20 U.S.C. § 1232g(a)(4)(A). "Information is directly related to a student if it has a close connection to that student." *Rhea v. District Bd. of Trustees of Santa Fe Coll.*, 109 So. 3d 851, 857 (Fla. Dist. Ct. App. 2013). Records therefore directly relate to a student if "the matters addressed in the . . . records pertain to actions committed or allegedly committed by or against" the student and contain information identifying the student. *United States v. Miami Univ.*, 91 F. Supp. 2d 1132, 1149 (S.D. Ohio 2000), *aff'd*, 294 F.3d 797 (6th Cir. 2002); *State ex rel. ESPN*, 970 N.E.2d at 946–47; *see also Osborn v. Board of Regents of the Univ. of Wis. Sys.*, 2002 WI 83, ¶ 22 n.11, 647 N.W.2d 158 (observing that "once personally identifiable information is deleted, by definition, a record is no longer an education record since it is no longer directly related to a student").

¶22    In denying Bryner's request for the Video, the District relied on guidance from the United States Department of Education's Family Policy Compliance Office (the FPCO), which implements and oversees institutional compliance with FERPA. The District explained that it was the FPCO's position that "a parent may only inspect a school videotape showing his or her own child engaged in misbehavior if no other students are pictured":

> If education records of a student contain information on more than one student, the parent requesting access to education records has the right to inspect and review, or be informed of, only the information in the record directly related to his or her child. . . . If, on the other hand, another student is pictured fighting in the videotape, [the parent] would not have the right to inspect and review that portion of the videotape.

(Omission in original.) Other guidance provided by the FPCO suggests that video recordings may constitute education records only for those students who are "directly related" to the focus or subject of the video. *See, e.g.*, Opinion of the Texas Attorney General, OR2006-07701 (July 18, 2006) ("[T]he [FPCO] . . . has determined that videotapes of this type do not constitute the education records of students who did not participate in the altercation. . . . The [FPCO] has, however, determined that the images of the students involved in the altercation do constitute the education records of those students. Thus, FERPA does apply to the students involved in the altercation."); Opinion of the Texas Attorney General, OR2006-00484 (Jan. 13, 2006) (same).

¶23    We agree with the trial court that the Video contains information directly related to the students involved in the altercation. The Video pertains to "actions committed or allegedly committed by or against" Bryner's child and other students. Indeed, the Video is nothing more than a record of the actions of the students involved in the incident. And the students' images in

the Video constitute information identifying the students.[2] Accordingly, the Video contains information "directly related to" the students involved in the incident.[3]

B.    The Video Was Maintained by Persons Acting for the District.

¶24    To be considered an education record, a record must also be "maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A)(ii) (2012). Bryner argues that the Video is not an education record, because it is not maintained by the District or a person acting for the District.

¶25    Bryner argues that this element is not met, because the District admitted that the Video was not "administered by educators," or "regularly reviewed by educators." However, FERPA requires only that the record be maintained by or on behalf of an educational agency, not that educators themselves maintain the records or review them. *See id.* Accordingly, Bryner has failed to demonstrate that the trial court's ruling is erroneous.[4]

---

2. In reaching this conclusion, we are guided by the definition of "[p]ersonally identifiable information" contained in FERPA's implementing regulations. *See* 34 C.F.R. § 99.3 (2014). The students' images are the type of information that is "linkable to a specific student" and that would allow "a reasonable person in the school community, who does not have personal knowledge of [the altercation,] to identify the student[s] with reasonable certainty." *See id.*

3. This includes Bryner's child, but as the trial court determined, it also includes information directly related to other students as well.

4. Amicus argues that the Video is not maintained by the District, because it is not "kept in a filing cabinet in a records room at the school." Amicus relies on the Supreme Court's statement in *Owasso Independent School District No. I-011 v. Falvo* that the word

(continued...)

¶26    Because the Video contains information directly related to students involved in the incident other than Bryner's child and Bryner has failed to demonstrate that the Video was not "maintained" by the District, the trial court correctly concluded that the Video is an education record. Accordingly, we affirm the trial court's determination that the Video is subject to the protections of FERPA.[5]

---

4. (...continued)
"'maintain' suggests FERPA records will be kept in a filing cabinet in a records room at the school or on a permanent secure database." *See* 534 U.S. 426, 433 (2002). However, the question before the Court was whether peer-graded assignments were education records before receipt and recording by a teacher, *id.* at 432–33, and *Owasso* did not address the question of what procedures constitute maintenance once the school is already in possession of a record. Thus, we do not read *Owasso* to impose a strict requirement that records must be kept in a central location such as a filing cabinet to qualify as an education record as defined in FERPA. And we see no basis in the statutory language of FERPA to impose such a strict limitation.

5. Amicus also contends that the Video is not an education record because it is akin to a law enforcement record. Under FERPA, "records maintained by a law enforcement unit of the educational agency or institution that were created by that law enforcement unit for the purpose of law enforcement" are not considered education records. 20 U.S.C. § 1232g(a)(4)(B)(ii) (2012). Even assuming the Video was created for a law enforcement purpose, i.e., security, "[r]ecords created . . . for a law enforcement purpose that are maintained by a component of the educational agency or institution other than the law enforcement unit" are not law enforcement records. *See* 34 C.F.R. § 99.8(b)(2) (2014). Because Bryner has failed to demonstrate that the record was both created and maintained by a law enforcement unit, he has failed to meet his burden to demonstrate that the Video is not an "education record" as defined by FERPA.

## II. Pursuant to GRAMA, the District Can Provide a Redacted Record and Need Not Pay the Costs of the Redaction Required for Compliance with FERPA.

¶27 Bryner next argues that the trial court erroneously ordered him to pay the cost for redacting the personally identifying information of the other students pictured in the Video. We agree with the trial court's determination that Bryner could obtain only a redacted record but that Bryner should bear the cost of the District's redaction of the other students' personally identifying information.

¶28 It is true that FERPA prevents an educational agency receiving federal funds from implementing "a policy of denying, or which effectively prevents, the parents of students . . . the right to inspect and review the education records of their children." 20 U.S.C. § 1232g(a)(1)(A) (2012). However, when an education record contains material or information on more than one student, "the parents of one of such students shall have the right to inspect and review *only such part of such material or document as relates to such student*." *Id.* (emphasis added). Thus, while Bryner has a right to "inspect and review" the part of the Video relating to his child, he does not "have the right to inspect and review" the portions of the Video in which other students are pictured.[6] *See id.* For Bryner to inspect and review the part of the Video relating to his child, the other students' personally identifying information must be

_____

6. A parent has a right to inspect and review a document *or* "be informed of the specific information contained in such part of such material." 20 U.S.C. § 1232g(a)(1)(A) (2012). To the extent Bryner claims he should be informed of the specific information contained in the Video, we decline to address that claim because Bryner never sought this relief in the trial court. "To preserve an argument for appellate review, the appellant must first present the argument to the district court 'in such a way that the court has an opportunity to rule on [it].'" *Gowe v. Intermountain Healthcare, Inc.*, 2015 UT App 105, ¶ 7 (alteration in original) (quoting *Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828). This argument is therefore unpreserved, and thus we do not address it.

redacted, or the District must obtain "the written consent of [the other students'] parents." *See id.* § 1232g(b)(1).

¶29 GRAMA governs the procedure for requesting government records unless the statute or regulation governing disclosure of the record conflicts with GRAMA. Utah Code Ann. § 63G-2-201(6) (LexisNexis Supp. 2012). Thus, "[w]hile [FERPA's] specific provisions will control in the event of an irreconcilable conflict, GRAMA's provisions will still apply so long as they are not inconsistent with [FERPA]." *See Southern Utah Wilderness Alliance v. Automated Geographic Reference Ctr.*, 2008 UT 88, ¶¶ 17–21, 200 P.3d 643 (first alteration in original) (citation and internal quotation marks omitted) (holding that two Utah statutes governing the Automated Geographic Reference Center did not contain any language designating certain records as nonpublic or restricting access to them, and therefore "GRAMA's presumption that the government records [were] public remain[ed] intact"). While FERPA defines education records and provides guidelines for disclosure of such records, FERPA does not directly address whether education records may be redacted or whether a fee may be charged for such redaction. *See United States v. Miami Univ.*, 294 F.3d 797, 824 (6th Cir. 2002) ("Nothing in . . . FERPA would prevent [educational institutions] from releasing properly redacted records."). We therefore conclude that GRAMA's provisions regarding redaction and fees apply to Bryner's request.

¶30 "In response to a request, a governmental entity is not required to . . . compile, format, manipulate, package, summarize, or tailor information . . . [or to] provide a record in a particular format, medium, or program not currently maintained by the governmental entity . . . ." Utah Code Ann. § 63G-2-201(8)(a). If a request requires the record to be tailored under either of these circumstances, the governmental entity may provide the record if "the governmental entity determines it is able to do so without unreasonably interfering with the governmental entity's duties and responsibilities . . . [and] the requester agrees to pay the governmental entity for providing the record in the requested form." *Id.* § 63G-2-201(8)(b). When a governmental entity must modify a record to fulfill a request, the entity "may charge a

reasonable fee to cover the governmental entity's actual cost of providing a record," *id.* § 63G-2-203(1) (LexisNexis 2011), which may include "the cost of staff time for compiling, formatting, manipulating, . . . or tailoring the record . . . to meet the person's request," *id.* § 63G-2-203(2)(a). Additionally, "[a] governmental entity may require payment of . . . future estimated fees before beginning to process a request if . . . fees are expected to exceed $50." *Id.* § 63G-2-203(8)(a)(i).

¶31    Because the trial court determined that the Video was an education record subject to FERPA and it contained personally identifiable information of other students, Bryner could only inspect the material or document that related to his child. Thus, the trial court inquired as to the feasibility of redacting the personally identifiable information of the other students in the Video. The District reported to the trial court that redaction was feasible and that an employee of the District had the ability to redact or blur the student images. The District determined that providing a redacted copy of the Video would cost about $120 based on the approximate rate of pay of the employee doing the redaction.

¶32    In accordance with FERPA and GRAMA, the Video had to be redacted before Bryner could receive a copy of it, and the District could charge a reasonable fee for the redaction process. We uphold the trial court's determination that the District introduced sufficient evidence that for $120, the District could create a redacted copy of the Video with the personally identifiable information of the other students removed. Accordingly, the trial court did not err in ordering the District to produce a redacted copy of the Video and requiring Bryner to bear the cost of redaction.[7]

---

7. Bryner argues that the trial court should have taxed the cost of redaction to the District as a cost of litigation or that the fee should have been waived because the District is "encouraged" under GRAMA to fulfill the request without charge under these circumstances. However, Bryner cites no authority and conducts no legal analysis to support this claim. Bryner also argues that the trial court lacked authority to impose a ten-day deadline for his

(continued...)

CONCLUSION

¶33    We affirm the trial court's ruling that the Video is an education record subject to FERPA. We also conclude that the trial court did not err in ordering the District to produce a redacted copy of the Video upon Bryner's payment of the estimated cost of redaction.

———————

7. (...continued)
payment of the redaction fee. "Trial courts have broad discretion in managing the cases assigned to their courts." *Welsh v. Hospital Corp. of Utah*, 2010 UT App 171, ¶ 9, 235 P.3d 791 (citation and internal quotation marks omitted). Bryner has failed to explain how the court abused its discretion in setting a ten-day deadline for Bryner to remit payment in order to receive a redacted copy of the Video.